**CONNECTICUT BAR ASSOCIATION,**
**et al.**

**v.**

**UNITED STATES of America,**
**et al., Defendants.**

**Civil Action No. 3:06–CV–729 (CFD).**

United States District Court,
D. Connecticut.

Sept. 9, 2008.

Barry S. Feigenbaum, Rogin, Nassau, Caplan, Lassman & Hirtle, Hartford, CT, Jonathan S. Massey, Jonathan S. Massey, Esq., Bethesda, MD, for Plaintiffs.

Marcia K. Sowles, U.S. Department of Justice, Washington, DC, Ann M. Nevins, U.S. Attorney's Office, Bridgeport, CT, Dewitt Brown, William H. Schorling, Klett, Rooney, Lieber & Schorling, PC, Philadelphia, PA, Thomas D. Goldberg, Day Pitney LLP, Stamford, CT, for Defendants.

### *RULING ON PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANT'S MOTION TO DISMISS*

CHRISTOPHER F. DRONEY, District Judge.

The plaintiffs in this action are the Connecticut Bar Association ("CBA"), the National Association of Consumer Bankruptcy Attorneys ("NACBA"), several individual bankruptcy attorneys, a family law attorney, a creditors' law firm, and an individual client of an attorney. The defendants (collectively, the "Government") are the United States of America, Alberto Gonzales (in his official capacity as Attorney General of the United States), and Diana G. Adams (in her official capacity as acting United States Trustee).[1] The

---

1. These individuals are the heads of the agencies charged with enforcing the provisions at issue. Attorney General Gonzales has been replaced as Attorney General of the United States by Michael Mukasey. Federal Rule of Civil Procedure Rule 25(d) states in pertinent part:

An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substan-

plaintiffs challenge as unconstitutional sections 227, 228, and 229 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA" or "the Act"), additions to the Bankruptcy Code codified at 11 U.S.C. §§ 526, 527, and 528, if those provisions are construed by the Government to apply to licensed attorneys at law. Plaintiffs allege that the provisions, as interpreted by the Government, violate the First and Fifth Amendments to the United States Constitution and restrict the ability of attorneys to practice law. The plaintiffs filed a motion for a preliminary injunction to enjoin the Government from enforcing these sections against them. The Government then filed a motion to dismiss the plaintiffs' complaint for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), and for lack of subject matter jurisdiction under Rule 12(b)(1).

## I. Background

On April 20, 2005, Congress passed the Bankruptcy Abuse Prevention and Consumer Protection Act, the relevant provisions of which became effective on October 17, 2005. BAPCPA defines a category of bankruptcy service providers called "debt relief agencies" and imposes a series of restrictions and requirements on entities falling within this category. The United States has taken the position that attorneys are "debt relief agencies" within the meaning of the statute. The provisions at issue are described in the analysis below.

The plaintiffs seek a declaratory judgment that the debt relief provisions do not apply to them as attorneys, or in the alternative, that to the extent that the provi-

tial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.

sions do apply to them they are unconstitutional. In addition, the plaintiffs seek preliminary and permanent injunctive relief enjoining the defendants from enforcing the sections against them.

## II. Legal Standards

### A. Preliminary Injunction

Plaintiffs argue that sections 526, 527, and 528 of Title 11 violate, on their face, plaintiff's constitutional rights if they are construed to apply to attorneys. To obtain a preliminary injunction the plaintiffs must demonstrate: (1) that they will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in their favor. *Lusk v. Village of Cold Spring*, 475 F.3d 480, 485 (2d Cir.2007).

### B. Motion to Dismiss

#### 1. *Failure to State a Claim—Rule 12(b)(6)*

The threshold for surviving the motion to dismiss does not rise to the level of likelihood of success. When considering a Rule 12(b) motion to dismiss, the court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled* on *other grounds* by *Davis v. Scherer*, 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984); *Grandon v. Merrill Lynch & Co., Inc.*, 147 F.3d 184, 188 (2d Cir.1998). The Second Circuit noted in *Iqbal v. Hasty* that the Supreme

Thus Attorney General Mukasey is substituted as a defendant in this action. Future filings by the parties shall reflect this substitution.

Court created "[c]onsiderable uncertainty concerning the standard for assessing the adequacy of pleadings" in *Bell Atl. Corp. v. Twombly,* but explained that *Twombly* did not heighten the pleading standard for all cases. *Iqbal v. Hasty,* 490 F.3d 143, 155, 157 (2d Cir.2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Rather, *Twombly* "instead [requires] a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Id.* at 157–58 (emphasis in original). "Nevertheless, even after Iqbal and Twombly, the issue on a motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Ciacciarella v. Bronko,* 534 F.Supp.2d 276, 277 (D.Conn.2008) (quoting *Desiano v. Warner–Lambert Co.,* 326 F.3d 339, 347 (2d Cir.2003)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted. *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir.2002) (internal quotation marks omitted). In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken. *See* Fed.R.Civ.P. 12(c); *Courtenay Commc'ns Corp. v. Hall,* 334 F.3d 210, 213 (2d Cir.2003); *Leonard F. v. Israel Discount Bank of N.Y.,* 199 F.3d 99, 107 (2d Cir.1999).

### 2. Lack of Subject Matter Jurisdiction—Rule 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1).

Under that rule, a case is properly dismissed "when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Local 6 Pension Fund,* 81 F.3d 1182, 1187 (2d Cir.1996). A district court evaluating a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) "must look to the way the complaint is drawn to see if it claims a right to recover under the laws of the United States." *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1055 (2d Cir.1993) (quoting *Goldman v. Gallant Secs. Inc.,* 878 F.2d 71, 73 (2d Cir.1989)), *cert. denied,* 513 U.S. 822, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994). As with a motion to dismiss pursuant to Rule 12(b)(6), "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." *Raila v. United States,* 355 F.3d 118, 119 (2d Cir.2004); *see Lerner v. Fleet Bank, N.A.,* 318 F.3d 113, 128 (2d Cir.2003), *cert. denied,* 540 U.S. 1012, 124 S.Ct. 532, 157 L.Ed.2d 424 (2003) (noting that "[t]he standards for dismissal under Rules 12(b)(1) and 12(b)(6) are substantially identical"). "Dismissal is inappropriate unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief." *Raila,* 355 F.3d at 119. Both the moving and non-moving parties "may use affidavits and other materials beyond the pleadings themselves in support of or in opposition to a challenge to subject matter jurisdiction." *Matos v. United States Dept. of Housing & Urban Dev.,* 995 F.Supp. 48, 49 (D.Conn.1997) (citing *Land v. Dollar,* 330 U.S. 731, 735, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947)). The district court also "may inquire, by affidavits or otherwise, into the facts as they exist." *Land,* 330 U.S. at 735 n. 4, 67 S.Ct. 1009; *see also Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir.1976).

## III. Discussion

### A. Standing

The defendants argue that four plaintiffs (Brown & Welsh, Jeffrey Sklarz, Gerald Roisman, and Wayne Silver) should be dismissed for lack of standing because they cannot show that they have suffered any injury in fact as a result of the challenged provisions because they are not "debt relief agencies" under defendants' interpretation of BAPCPA. To have standing under Article III of the U.S. Constitution, a plaintiff must show: (1) he has suffered an injury in fact that is concrete or imminent, not conjectural or hypothetical; (2) there is a causal connection between the injury and the defendant's conduct; and (3) the injury is likely to be redressed by a favorable decision of the Court. *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 187, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

When faced with a motion to dismiss, a plaintiff bears the burden of pleading facts that, if true, would establish standing for each of his claims. *Id.* at 190, 120 S.Ct. 693. A federal court must dismiss a claim unless all three elements are satisfied. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 126 S.Ct. 1854, 1861, 164 L.Ed.2d 589 (2006); *Bennett v. Spear*, 520 U.S. 154, 167, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997). At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice," and the court "presum[es] that general allegations embrace the specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Brown & Welsh represents only creditors and thus does not meet the defendants' definition of debt relief agency, which only includes attorneys representing debtors. Attorney Sklarz has not stated that he represents consumer debtors seeking bankruptcy protection, but only that the practice of his firm includes bankruptcy. Gerald Roisman alleged that he focuses on family law matters and sometimes discusses bankruptcy with his clients. Wayne Silver represents both debtors and creditors in bankruptcy proceedings, but he has voluntarily stopped representing debtors and thus the Government argues he cannot show he is injured by the debt relief agency provisions.

Under the standard described above, the Court finds that all of these plaintiffs have alleged sufficient injury in fact to pursue their claims. As discussed below, the Court has adopted the plaintiffs' position that the debt relief provisions of BAPCPA apply to attorneys beyond those who represent debtors, which would thus include all of the challenged plaintiffs. Plaintiffs claim that BAPCPA's debt relief agency sections both stifle and compel their speech, in violation of the U.S. Constitution. First Amendment jurisprudence makes clear that a claim that a law has a potential chilling effect on speech establishes standing. *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988); *Cf. Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991) (compelled speech contravenes core First Amendment values and satisfies irreparable injury in preliminary injunction context).

### B. Constitutionality of Challenged Provisions

#### 1. Statutory Interpretation Issues

#### a. Attorneys as Debt Relief Agencies

BAPCPA defines debt relief agencies as "any person who provides bankruptcy assistance to an assisted person in return for the payment of money or other

valuable consideration, or who is a bankruptcy petition preparer under section 110," followed by a list of specific exclusions. 11 U.S.C. § 101(12A). The definition of bankruptcy assistance includes many functions of lawyers: "providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation."

The Court finds in reading the statute for its plain meaning that attorneys are debt relief agencies. *See Milavetz, Gallop & Milavetz, P.A. v. United States*, 541 F.3d 785, 790–92 (8th Cir.2008) (a plain reading of the definitions in the statute leads to the conclusion that attorneys who provide "bankruptcy assistance" to "assisted persons" are unambiguously included in the definition of "debt relief agencies"), *Lamie v. United States Trustee*, 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (applying plain meaning analysis to portions of Bankruptcy Code). Attorneys clearly provide services within the definition of "bankruptcy assistance." In fact, only lawyers can provide legal representation—if the statute did not apply to attorneys, listing these functions would have been superfluous and unnecessary. In addition, attorneys are not specifically excluded from the definition as are some other categories. Thus, the plain meaning of the statute shows that attorneys are meant to be included in the definition of debt relief agencies.[2] *See Olsen v. Gonzales*, 350 B.R. 906 (D.Or.2006) (*adhered to on reconsideration*, 368 B.R. 886, Bankr.L.Rep. 80,938 (D.Or.2007) (attorneys are debt relief agencies under plain meaning of statute)); *Hersh v. United States*, 347 B.R. 19, 23 (N.D.Tex.2006) (same); *In re Irons*, 379 B.R. 680, 685 (Bkrtcy.S.D.Tex.2007) (same).

The plaintiffs argue that since attorneys are not explicitly included in the definition of debt relief agencies, attorneys are not debt relief agencies, especially in light of the fact that "bankruptcy petition preparers" are included explicitly in the definition of debt relief agencies, and attorneys are expressly excluded from the definition of bankruptcy petition preparers.[3] *See In re Attorneys at Law and Debt Relief Agencies*, 332 B.R. 66, 67 (Bkrtcy.S.D.Ga.2005) However, this suggests that a possible inference from what is likely imprecise drafting outweighs the plain meaning of the statute as described above, and the Court rejects such an interpretation. *See Hersh*, 347 B.R. at 23.

---

**2.** The plaintiffs also argue that if the statute is deemed ambiguous as to whether attorneys are debt relief agencies, under the doctrine of constitutional avoidance the Court should find that it does not in order to avoid these constitutional questions. *See Milavetz, Gallop, & Milavetz P.A v. United States*, 355 B.R. 758, 768 (D.Minn.2006) (applying doctrine in same situation). However, the Eighth Circuit in *Milavetz, Gallop & Milavetz P.A.*, 541 F.3d 785, disagreed with the decision of the district court, as noted above. This Court finds that the statute is not ambiguous and clearly applies to attorneys.

**3.** In addition, the plaintiffs argue, the statutory interpretation provision in section 526(d)(2) further supports their argument that attorneys are not debt relief agencies. The interpretation provision states that provisions 526, 527, and 528 "shall not be deemed to limit or curtail the authority or ability of a State or subdivision or instrumentality thereof to determine and enforce qualifications for the practice of law under the laws of that State ...". At least one court has found this argument to be convincing. *See Milavetz, Gallop, & Milavetz P.A v. United States*, 355 B.R. 758, 768 (D.Minn.2006).

However, the defendants argue, and the Court agrees, that the statutory interpretation provision is only relevant to qualifications to practice law (law school attendance, etc) and not to whether attorneys are meant to follow the mandates of BAPCPA.

In addition, the parties disagree over whether if the statute applies to attorneys at all, it applies solely to attorneys who represent consumer debtors, or to those representing creditors or other clients whose legal issues touch on bankruptcy but are not filing for bankruptcy protection themselves (non-debtor spouses, landlords, etc.). Again, a "debt relief agency" is defined as "any person who provides bankruptcy assistance to an assisted person in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer under section 110." 11 U.S.C. § 101(12A). An "assisted person" is "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $150,000." 11 U.S.C. § 101(3). Further, "bankruptcy assistance" is defined as

> any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title.

11 U.S.C. § 101(4A). The statute's definition of "assisted person" requires that the debts of an assisted person be consumer debts, but it does not require that the "bankruptcy assistance" provided be with respect to that person's debts. Nothing in the text of the statute limits its application to attorneys representing debtors contemplating filing for bankruptcy.[4] *See* Erwin Chemerinsky, *Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,* 79 AM. BANKR. L.J. 571, 576–77 (2005). Thus, the Court finds that the statute applies to attorneys providing any of the above services to anyone qualifying as an "assisted person." This could include customers of a failed business, non-debtor spouses, or anyone else who may need representation related to a bankruptcy proceeding, so long as they are an "assisted person."

### 2. Section 526(a)(4)—Prohibition on Advice to Incur More Debt

Section 526(a)(4) prohibits debt relief agencies from advising clients "to incur more debt in contemplation" of filing for bankruptcy or "to pay an attorney or bankruptcy petition preparer fee." The parties disagree over whether the Court should apply strict scrutiny of its constitutionality or some other standard in making this determination, and over whether section 526(a)(4) meets whichever standard is applied.

Because these restrictions are content-based and affect protected speech, the plaintiff argues that strict scrutiny should be applied. *See United States v. Playboy Entm't Group, Inc.,* 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865. This argument rests on the principle that attorneys' speech on matters of legal representation should be accorded strong constitutional protection. *See Legal Services Corp. v. Velazquez,* 531 U.S. 533, 544, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001); *Florida Bar v. Went for It, Inc.,* 515 U.S. 618, 634, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995). Thus, the restrictions should only be upheld if they are narrowly tailored to promote a compelling government interest.

---

4. The defendants argue that although the new provisions do apply to attorneys, they only apply to attorneys who provide advice, counsel, or legal representation to a debtor contemplating filing or seeking to file bankruptcy. Since the new statute is meant to address bankruptcy and is part of the Bankruptcy Code, they argue, the definition of bankruptcy assistance must mean advice given to debtors filing for bankruptcy.

The government argues that a balancing test from *Gentile v. State Bar of Nevada* should be used to evaluate the provision because it is an ethical restriction on lawyers, rather than a ban on core protected speech. *See* 501 U.S. 1030, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991). In *Gentile*, the Supreme Court faced the question of whether a test used by the Nevada Supreme Court in regulating attorney statements to the press violated the First Amendment. The Court found the restriction was void for vagueness, but it did not apply strict scrutiny. Instead, it evaluated whether there was a "constitutionally permissible balance" between the First Amendment rights of attorneys and the government's legitimate interest in regulating the activity in question. The court found this balance was achieved because (1) the ethical restrictions served the state's legitimate interest in regulating the activity in question, and (2) the restrictions imposed only narrow and necessary limitations on lawyers' speech. *Id.* at 1075, 111 S.Ct. 2720.

■ Both tests require that the restrictions be narrow limitations on speech.[5] Under either test, assuming the government interests are legitimate,[6] the Court finds that section 526(a)(4) is not sufficiently narrow and necessary to further these government interests. Section 526(a)(4) is overbroad because it prohibits attorneys from advising their clients to incur any kind of debt prior to filing for bankruptcy, including debts that are legal and desirable in certain instances. *See Zelotes v. Martini,* 352 B.R. 17, 25 (D.Conn.2006) (holding that § 526(a)(4) is overbroad and restricts attorney speech beyond what is "narrow and necessary" to further the governmental interest); *Olsen v. Gonzales,* 350 B.R. 906 (D.Or.2006) ("regulation is not sufficiently narrow to achieve the legitimate interest of preventing abuse in the bankruptcy system as it also ensnares advice regarding lawful actions in contemplation of bankruptcy that benefit the debtor and creditors"); *Hersh v. United States,* 347 B.R. 19, 23 (N.D.Tex.2006) (holding section 526(a)(4) imposes limitations on speech beyond what is "narrow and necessary"); *see also* Chemerinsky, *supra,* at 577.

For example, as stated by one district court:

> [I]t might be financially prudent for a debtor considering bankruptcy to (1) obtain a mortgage or refinance a mortgage at a lower rate in order to reduce payments, pay off various other debts or obtain a lower interest rate prior to entering bankruptcy, (2) take on secured debt, such as an automobile loan, that would survive bankruptcy while enabling the debtor to continue to get to work and make payments, (3) take out a loan

---

**5.** The Court is not persuaded that section 526(a)(4) is meant to be an ethical standard. The section is titled "Restrictions on debt relief agencies" and definitively outlines required and prohibited actions. In contrast, the *Gentile* Court was considering the constitutionality of a standard enunciated by the Nevada Supreme Court to distinguish between permissible and impermissible attorney communication with the press. 501 U.S. at 1065–76, 111 S.Ct. 2720; *see also Canatella v. Stovitz,* 365 F.Supp.2d 1064 (N.D.Cal.2005) (utilizing *Gentile* test in holding state bar statutes and professional rules not unconstitu-

tional). However, since both strict scrutiny and the *Gentile* test require a regulation to be sufficiently narrow to further the government interest, the Court need not further resolve this distinction.

**6.** The government asserts that section 526(a)(4) protects the integrity and fairness of the bankruptcy system, namely the principles of ratable distribution to creditors according to priorities set forth in the Code and a discharge to provide a fresh start for honest debtors.

to pay the filing fee in a bankruptcy case or to obtain the services of a bankruptcy attorney, (4) take out a loan to convert a non-exempt asset to an exempt asset, or (5) co-sign undischargeable student loans."

*Zelotes v. Adams*, 363 B.R. 660, 665 (D.Conn.2007), *citing Hersh*, 347 B.R. at 24; *Olsen*, 350 B.R. at 916; *Milavetz, Gallop, & Milavetz P.A v. United States*, 355 B.R. 758, 764 n. 2 (D.Minn.2006), Chemerinsky, *supra*, at 579. Furthermore, if a client intends to reaffirm the debt after filing bankruptcy, there is no prejudice to the bankruptcy process. The limitation on speech mandated by section 526(a)(4) thus extends beyond any need to protect the bankruptcy process. A lawyer who represents consumers contemplating bankruptcy bears the duty of zealous representation, and the prohibition on giving legal advice unnecessarily interferes with this duty.[7] *See Zelotes*, 352 B.R. at 24.

If the government seeks to prevent manipulation of the bankruptcy system, a more narrowly tailored approach would be to penalize those who take on certain types of debts, rather than prohibiting legal advice about permissible courses of action.

*See Hersh v. U.S.*, 347 B.R. at 24–25; *Cf. Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 371–72, 122 S.Ct. 1497, 152 L.Ed.2d 563 (2002) (striking down a ban on commercial speech under intermediate scrutiny because it was not less restrictive than a direct regulation of the conduct the banned speech was about); *NAACP v. Button*, 371 U.S. 415, 437, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963) (the First Amendment forbids penalizing those "advocating lawful means of vindicating legal rights"). As the law stands now, a debtor may take on more debt in contemplation of bankruptcy if he or she realizes independently or at the advice of a non-attorney that doing so is a viable option.

The government argues that section 526(a)(4)'s prohibition on advice to incur more debt "in contemplation" of bankruptcy only covers advice to a debtor to take on debt *because* he intends to file for bankruptcy, which means advice aimed at allowing the debtor to take unfair advantage of debt discharge (by running up debt primarily because it will not be repaid), or to "game" the means test (by acquiring enough debt to avoid the presumption of abuse).[8] However, there is no indication

---

7. Furthermore, as one court noted:

Section 526(a)(4) may also work to deprive courts, as well as clients, of good counsel. The interactions of constantly shifting bankruptcy provisions may cause situations to arise in which a legal yet otherwise counterintuitive behavior is in the client's best financial interest. Section 526(a)(4) prevents attorneys from presenting those options to their clients and ultimately to the courts. "By seeking to prohibit the analysis of certain legal issues and to truncate presentation to the courts, the enactment under review prohibits speech and expression upon which the courts must depend for the proper exercise of judicial power." *Legal Services Corp. v. Velazquez*, 531 U.S. 533, 545, 121 S.Ct. 1043, 149 L.Ed.2d 63 (2001). More succinctly put, "[a]n informed, inde-

pendent judiciary presumes an informed, independent bar." *Id.*
*Hersh*, 347 B.R. at 24 n. 9.

8. The "means test" is used to determine whether the presumption that a Chapter 7 filing is abusive should apply. If the filing is determined to be abusive, it is dismissed or converted to a Chapter 11 or 13 filing. 11 U.S.C. § 707(b)(1). Under this test, an abuse of the bankruptcy system is presumed when the amount of the debtor's income, after deduction of certain expenses and other specified amounts, exceeds certain thresholds. 11 U.S.C. § 707(b)(2)(A).

The Court further notes that if the presumption of abuse does not arise because the debt threshold has been met, a petition will still be dismissed as an abuse if it is filed in bad faith or if the totality of the circumstances demonstrates abuse.

in the statute that this prohibition is limited to advice to take on such fraudulent debt. *See Zelotes*, 352 B.R. at 24 ("It would strain the text of the statute to find that advising a client to take on more debt is prohibited only if the client is only advised to take on more debt in contemplation of filing for bankruptcy and not for other reasons. The text of the statute indicates that regardless of what the other reasons for incurring debt might be, advising a client to take on more debt in contemplation of bankruptcy is prohibited."). Furthermore, giving a client advice to take on illegal debt is already unethical.

■ Thus, the Court finds section 526(a)(4) is unconstitutional as applied to attorneys and their clients,[9] and the motion to dismiss is denied as to this provision.[10] Further, the plaintiffs have demonstrated both that they will be irreparably harmed if an injunction is not granted, and a likelihood of success on the merits. *See Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct.

2673, 49 L.Ed.2d 547 ("[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."); *Mastrovincenzo v. City of New York*, 435 F.3d 78, 79 (2d Cir.2006) ( [I]t is well settled that the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury). Thus defendants shall be enjoined from enforcing section 526(a)(4) against the plaintiffs.

### 3. Section 527—Required Disclosures

■ BAPCPA requires attorneys to provide "assisted persons" with written notice of specified information regarding bankruptcy and the bankruptcy process, providing in pertinent part:

A debt relief agency providing bankruptcy assistance to an assisted person shall provide each assisted person at the same time as the notices required under subsection (a)(1)[11] the following state-

---

**9.** The Supreme Court has recognized the right to hear speech as well as the right to speak. *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 756–57, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976). Thus, section 526(a)(4) also violates the First Amendment rights of clients to receive advice about legal course of action prior to bankruptcy, for same reasons that it violates the rights of attorneys to speak.

**10.** The plaintiffs also argue that section 526(a)(4) is unconstitutional on separation of powers, due process, equal protection, and Petition Clause grounds; however, the Court need not address these issues in light of its conclusion that the provision violates the First Amendment.

**11.** Subsection (a)(1) reads:

A debt relief agency providing bankruptcy assistance to an assisted person shall provide ... not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, a clear

and conspicuous written notice advising assisted persons that—

(A) all information that the assisted person is required to provide with a petition and thereafter during a case under this title is required to be complete, accurate, and truthful;

(B) all assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case, and the replacement value of each asset as defined in section 506 must be stated in those documents where requested after reasonable inquiry to establish such value;

(C) current monthly income, the amounts specified in section 707(b)(2), and, in a case under chapter 13 of this title, disposable income (determined in accordance with section 707(b)(2)), are required to be stated after reasonable inquiry; and

(D) information that an assisted person provides during their case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case under this title or other sanction, including a criminal sanction.

11 U.S.C § 527(a)(1).

ment, to the extent applicable, or one substantially similar. The statement shall be clear and conspicuous and shall be in a single document separate from other documents or notices provided to the assisted person.[12]

11 U.S.C. § 527(b). The plaintiffs argue that section 527 violates the First Amendment because it compels them to make statements with which they do not agree and "amounts to an injection of the government into the middle of the attorney-client relationship." They allege that the disclosures contain misleading and inaccurate information which undermines their legal advice, and which they would not provide to clients based on their understanding of the law and the exercise of their professional judgment. For example, the plaintiffs object to the provisions that suggest that one does not need an attorney to file for bankruptcy.

The United States Supreme Court has examined the constitutionality of factual disclosure requirements in professional settings. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669 (1988) (licensed fundraisers); *Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (doctors performing abortions); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 650–53, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (attorneys). While the right not to speak has been recognized by the Supreme Court; *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977); licensed professionals are subject to reasonable regulation of their profession, and thus their speech, by

**12.** The required statement is as follows:

IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER. "If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone. "The following information helps you understand what must be done in a routine bankruptcy case to help you evaluate how much service you need. Although bankruptcy can be complex, many cases are routine." Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules and Statement of Fi-

nancial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court. You will have to pay a filing fee to the bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a 'trustee' and by creditors. "If you choose to file a chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts." If you choose to file a chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with preparing your chapter 13 plan and with the confirmation hearing on your plan which will be before a bankruptcy judge. "If you select another type of relief under the Bankruptcy Code other than chapter 7 or chapter 13, you will want to find out what should be done from someone familiar with that type of relief." Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice.
11 U.S.C. § 527(b).

the state. *See Riley*, 487 U.S. at 799, 108 S.Ct. 2667.

Statutes compelling professionals to provide factually accurate disclosures are upheld if they are reasonably related to a government objective and are not unduly burdensome.[13] *See Planned Parenthood v. Casey*, 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (upholding disclosure requirements for doctors providing abortions because they were not unduly burdensome and First Amendment rights were indicated only as part of the practice of medicine, subject to reasonable licensing and regulation by the State); *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651, 105 S.Ct. 2265, 85 L.Ed.2d 652 (1985) (attorney advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers).

The written disclosure requirement is section 527 withstands this level of scrutiny. The factual disclosures provide information to assisted persons regarding bankruptcy and their legal options, and the government has a substantial and legitimate interest in ensuring that debtors are well informed about both. *Olsen*, 350 B.R. at 918; *Hersh*, 347 B.R. at 27. The disclosures are reasonably related to that interest because they ensure than basic information will be made available to consumer debtors, explain the procedures for filing for bankruptcy, and alert debtors that they may be approached by creditors seeking reaffirmation of debt.

The disclosures are not misleading, because if the disclosures do not apply in a certain situation, or if a generalized statement requires further information to be considered complete, the attorney can provide this explanation to the client.[14] *See id.; Olsen*, 350 B.R. at 918–19. In addition, informing potential clients that they do not need an attorney and can hire a bankruptcy petition preparer is not misleading, because the Bankruptcy Code does not require debtors to have attorneys. Moreover, nothing in section 527 prohibits attorneys from orally recommending that legal representation would be advantageous in a particular client's case. Nor do the disclosures mislead clients regarding

**13.** The plaintiffs argue that strict scrutiny should be applied. However, the cases they cite did not involve simple factual disclosures, but the required dissemination of an expression of a particular political or religious viewpoint. *See Board of Regents v. Southworth*, 529 U.S. 217, 120 S.Ct. 1346, 146 L.Ed.2d 193 (2000) (challenge to student activity fee because funds were used to subsidize political groups with which students disagreed); *Riley v. Nat'l Fed'n of the Blind of N.C., Inc.* 487 U.S. 781, 108 S.Ct. 2667, 101 L.Ed.2d 669(applying strict scrutiny to law requiring fundraisers to disclose to donors the average percentage of gross receipts received by charity from fundraiser because provision discriminated against smaller charities and was inextricably tied to political advocacy); *Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (statute criminalizing obscuring "Live Free or Die" slogan on license plates); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624, 63 S.Ct.

1178, 87 L.Ed. 1628 (1943) (state requirement compelling students to recite Pledge of Allegiance).

In contrast, the required disclosures here are all facts about the bankruptcy process. Although *Zauderer* was decided in the commercial speech context, and *Casey* in the abortion context, a reasonable relation test was applied in both situations to analyze the constitutionality of factual disclosures by professionals. Thus, the Court finds that the reasonable relation test is more appropriate in this situation.

**14.** For example, the plaintiffs argue that the disclosure incorrectly states that filing fees are required to file a petition in bankruptcy court, which is not accurate in all situations (for example when a court approves a waiver of the filing fee). An attorney could explain this exception to a client when applicable.

the distinction between attorneys and bankruptcy petition preparers; indeed, they explicitly state that bankruptcy petition preparers are not attorneys and that only attorneys can give legal advice.

Furthermore, the disclosure requirements are not overbroad, despite the fact that they will not be applicable or relevant in all cases, because the attorney is only required to provide the information "to the extent applicable" and the statements can be modified as long as it is "substantially similar" to the version in the statute. *See* 11 U.S.C. § 527(b). The attorney can thus control the distribution of the message. *See Hersh,* 347 B.R. at 27.

Thus, the disclosure requirement advances a sufficiently compelling government interest and does not unduly burden the attorney-client relationship. *See Olsen,* 350 B.R. at 917–19 (section 527 is constitutional under *Casey* ); *Hersh,* 347 B.R. at 27 (same). The motion to dismiss is granted as to section 527, and the motion for preliminary injunction is denied as to section 527.

### 4. Section 528(a)(1) and (a)(2)—Contract Provision

Sections 528(a)(1) and (a)(2) require that debt relief agencies execute a written contract with an assisted person, clearly explaining the services the attorney will provide and the fees or charges for such services, within five business days of the initial date of provision of bankruptcy assistance to that person. 11 U.S.C. § 528(a)(1), (a)(2). Because the statute does not contain an exception for situations in which a client refuses to sign the agreement, the plaintiffs contend that it imposes strict liability on attorneys and thus violates their rights to due process of law. *See Southwestern Tel. Co. v. Danaher,* 238 U.S. 482, 490–91, 35 S.Ct. 886, 59 L.Ed. 1419 (1915) (penalty for conduct that involved "no intentional wrongdoing; no departure from any prescribed or known standard of action, and no reckless conduct" is violation of due process). In addition, the plaintiffs argue that this contract provision violates the First Amendment because it burdens the exercise of free speech by punishing attorneys for an action they cannot control. Furthermore, they argue that if the statute is read to require termination of representation if the contract is not executed within five days, this could cause ethical violations if the termination of representation materially affects the clients' interests. Finally, the plaintiffs argue that the five-day requirement itself violates due process principles because it is simply not a long enough time to allow a contract to be executed in many situations. In fact, this provision could mean that telephone or emergency consultations are completely banned, because in those cases a contract could not be signed in time.

The defendants argue, and the Court agrees, that the contract requirement does not impose any restrictions on an attorney's freedom of speech, and is strictly an economic requirement and should thus be evaluated under a rational basis test. *See FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313–14, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993) (evaluating economic restriction based on whether it was rationally related to a legitimate government purpose under the Due Process Clause). There is a legitimate and strong government interest in requiring written contracts specifying fees and services, as has been recognized by the rules of professional conduct in many states as well as the ABA Model Rules. *See, e.g.,* MODEL RULES OF PROF'L CONDUCT R. 1.5(b) (2002) ("scope of representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated

to the client, preferably in writing, before or within a reasonable time after commencing representation"); CONNECTICUT RULES OF PROFESSIONAL CONDUCT, R. 1.5 ("[T]he basis or rate of the fee, whether and to what extend the client will be responsible for any court costs and expenses of litigation, and the scope of the matter to be undertaken shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation."). Requiring written contracts, as does the contested provision, serves the government interest in reducing misunderstandings between attorneys and clients, which is particularly important in the bankruptcy context because consumer debtors are especially vulnerable due to their financial problems. Congress likely decided that a five-day period was a reasonable time in which to execute such a contract.

The plaintiffs' claim that the provision imposes strict liability on attorneys and renders them without control over the contractual process is without merit. A client may only bring an action against an attorney if the attorney intentionally or negligently failed to comply with the provision. *See* 11 U.S.C. § 526(c)(2). An attorney who provides a contract to the client does not act negligently if the client does not return it within five days. Furthermore, attorneys can simply require a client to sign a contract at the time services are provided. This contract need not be an agreement that the attorney will represent the client in bankruptcy proceedings, but could simply be an initial fee agreement for consultation, and thus would not bind the client to a certain course of action.

Accordingly, the Court finds that sections 528(a)(1) and (a)(2) are constitutional. *See In re Robinson,* 368 B.R. 492, 500 n. 7 (Bkrtcy.E.D.Va.2007) ("[T]here can be little doubt that the requirement for a written contract applies to attorneys representing consumer debtors and is constitutional.") The motion to dismiss is granted as to section 528(a)(1) and (a)(2), and the motion for a preliminary injunction is denied as to section 528(a)(1) and (a)(2).

5. *Section 528(a)(3), (a)(4), and (b)(2)—Advertising Requirements*

■ Finally, the plaintiffs argue that Sections 528(a)(3), (a)(4), and (b)(2), as applied to them as attorneys or clients, violate the First Amendment by compelling them to make misleading statements. These sections of the BAPCPA mandate that the debt relief agency disclose, in any "advertisement of bankruptcy assistance," that the services are with respect to bankruptcy relief under the Bankruptcy Code, namely by including the following statement in any such advertisement: "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code." In section 528(b), "advertisement of bankruptcy assistance" is defined as "an advertisement, directed to the general public, indicating that the debt relief agency provides assistance with respect to credit defaults, mortgage foreclosures, eviction proceedings, excessive debt, debt collection pressure, or inability to pay any consumer debt."

■ "The right not to speak inheres in political and commercial speech [15] alike,

---

**15.** The plaintiffs argue that the statute is not regulating commercial speech at all, but is rather a requirement which compels them to state a non-commercial idea, with which they disagree, in their advertising. They contend that the required statement does not become commercial speech simply by virtue of appearing in the commercial context. However, the Court need not reach this issue because it finds that the regulation cannot

and extends to statements of fact as well as statements of opinion." *International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 71 (2d Cir.1996). The Supreme Court has held that purely factual disclosure requirements, as opposed to restrictions on speech, are reviewed under a relaxed standard and need only be "reasonably related to the state's interest in preventing the deception of consumers" and "not unjustified or unduly burdensome." *Zauderer,* 471 U.S. at 651, 105 S.Ct. 2265 (1985). In *Zauderer,* the Court explained that there are "material differences between disclosure requirements and outright prohibitions on speech" and that the "constitutionally protected interest in not providing any particular factual information in [ ]advertising is minimal." *Id.* at 650–51, 105 S.Ct. 2265; *see also National Elec. Mfrs. Ass'n v. Sorrell,* 272 F.3d 104, 114 (2d Cir.2001) ("Regulations that comply 'purely factual and uncontroversial' commercial speech are subject to more lenient review than regulations that restrict accurate commercial speech.")

In *National Electric* the Second Circuit applied the *Zauderer* reasonable relationship standard and upheld a regulation which required the manufacturers of certain products to label their products to inform consumers that the products contain mercury.[16] 272 F.3d at 113–15. The court reasoned:

> Commercial disclosure requirements are treated differently from restrictions on commercial speech because mandated disclosure of accurate, factual, commercial information does not offend the core First Amendment values of promoting efficient exchange of information or protecting individual liberty interests. Such disclosure furthers, rather than hinders, the First Amendment goal of the discovery of truth and contributes to the efficiency of the "marketplace of ideas." Protection of the robust and free flow of accurate information is the principal First Amendment justification for protecting commercial speech, and requiring disclosure of truthful information promotes that goal. In such a case,

---

withstand the lower level of scrutiny required for commercial speech.

16. In *International Dairy Foods,* the Second Circuit applied the *Central Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York* intermediate scrutiny standard to a Vermont statute requiring dairy manufactures who used a synthetic growth hormone in the production of milk for retail sale to label those products as such. 92 F.3d at 72–73 (applying *Cent. Hudson Gas & Elec. Corp.,* 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980)). The United States Food and Drug Administration had determined there is no significant difference between milk from treated and untreated cows; however, the law's purpose was to help consumers make informed shopping decisions. *Id.* at 69–70. The court found that Vermont failed to establish that its asserted interests, "strong consumer interest and the public's right to know," were substantial enough to justify the regulation, and held that "consumer curiosity alone is not a strong enough state interest to

sustain the compulsion of even an accurate, factual statement in a commercial context." *Int'l Dairy Foods,* 92 F.3d at 74 (internal citations omitted).

The plaintiffs cite this case for the proposition that the more rigorous *Central Hudson* standard should be applied to compelled commercial speech. *Central Hudson* requires, for restrictions on non-deceptive advertising, (1) the government must assert a substantial interest in support of its regulation; (2) the government must demonstrate that the restriction on commercial speech directly advances that interest; and (3) the regulation must be narrowly drawn and no more extensive than necessary. *Cent. Hudson Gas & Elec. Corp.,* 447 U.S. at 564–65, 100 S.Ct. 2343.

However, in *National Electric,* the Second Circuit expressly limited its *International Dairy Foods* holding to "cases in which a state disclosure requirement is supported by no interest other than the gratification of consumer curiosity." 272 F.3d at 115 n. 6.

then, less exacting scrutiny is required than where truthful, nonmisleading commercial speech is restricted. 272 F.3d at 113–14 (citing cases). The court noted, however, that their decision "reaches only required disclosure of factual commercial information," and that "[r]equiring actors in the marketplace to espouse particular opinions would likely raise issues not presented here." *Id.* at 114 n. 5, citing *Zauderer*, 471 U.S. at 651, 105 S.Ct. 2265.

The Court finds that, as applied to certain attorneys, the advertising disclosure required by section 528 is not reasonably related to the state's interest in preventing the deception of consumers. As discussed above, the definition of "debt relief agency" encompasses attorneys beyond those who actually do help people file for relief under the Bankruptcy Code and extends to attorneys for creditors, landlords and other clients whose legal issues relate to bankruptcy. The two-line statement must appear in any "advertisement of bankruptcy assistance," which includes advertisements pertaining to "assistance with respect to credit defaults, mortgage foreclosures, eviction proceedings, excessive debt, debt collection pressure, or inability to pay any consumer debt." Thus, the second sentence of the required statement—"We help people file for bankruptcy relief under the Bankruptcy Code"—is only a truly accurate factual disclosure in a limited number of situations in which it is required to be stated, and in many other situations, it is in fact a false statement—but the advertiser is nevertheless required to adopt it as its own view.[17] Furthermore, as applied to attorneys for clients other than debtors, section 528 is not reasonably related to preventing consumer deception as (a) there is no evidence that bankruptcy advertisements by attorneys for clients other than debtors were ever deceptive, and (b) the disclosure's factual inaccuracy with respect to attorneys who do not represent debtors precludes any conclusion that such a statement could be reasonably related to preventing deception of non-debtor clients.[18]

Thus, the motion to dismiss is denied and the preliminary injunction is granted

17. The Government argues that attorneys are free to clarify the statement in the remainder of their advertisements; however, this would be difficult and confusing in the limited context of an advertisement. This difficulty in clarification, in combination with the fact that this required statement is actually false in many instances, distinguishes the requirement in section 528 from the purely factual disclosures about the bankruptcy process required by section 527.

The Court further notes that the required disclosure in section 528 differs from those in *Zauderer* and *National Electric*, as it requires each advertiser to publish the same disclosure, rather than to disclose specific facts relevant to a particular product or service.

18. The Court acknowledges that the Eighth Circuit has upheld the constitutionality of section 528, *see Milavetz, Gallop & Milavetz, P.A. v. United States*, 541 F.3d 785, 797 and n. 12 (8th Cir.2008) (because § 528 permits a "substantially similar" disclosure to the one suggested by the Code, attorneys who do not represent debtors in bankruptcy should tailor their advertisement disclosure statements to factually represent the "bankruptcy assistance" they provide). The Court respectfully disagrees with the Eighth Circuit's holding that attorneys who do not represent debtors in bankruptcy nor help people file for bankruptcy relief could comply with section 528(a)(4) by including a "substantially similar" disclosure to the one suggested by the Code that factually represents the "bankruptcy assistance" they provide. For such a disclosure to be accurate with respect to these attorneys, it would necessarily be substantially *dis-similar* from the statement prescribed by section 528.

Two district courts considering the constitutionality of section 528 have come to slightly different conclusions. In *Milavetz*, the court applied *Central Hudson's* intermediate scrutiny test and found that section 528 did not directly and materially advance the gov-

as to section 528(a)(3) and (a)(4) as it applies to advertisements by plaintiff attorneys who do not represent consumer debtors.[19]

However, as applied to attorneys who do assist clients in filing for bankruptcy under the bankruptcy code, in their advertisements for bankruptcy services, section 528 does serve the government's interest in preventing deception. The government cited evidence presented before Congress that some bankruptcy lawyers did not mention in their advertisements that their ability to make "debts disappear" derived from the use of the bankruptcy process. These ads led some individuals to be misled that somehow they could erase debt without resorting to bankruptcy and the reduced credit rating and attorneys' fees that accompany it. Although the two-line disclosure is not the least restrictive means, nor the most effective means, of serving this interest, Congress could have reasonably decided it would prevent at least some consumer deception.[20]

Thus, the motion to dismiss is granted and the preliminary injunction is denied as to section 528(a)(3) and (a)(4) as applied to attorneys representing consumer debtors.

## IV. Conclusion

The plaintiffs' motion for a preliminary injunction [Dkt. # 4] is GRANTED in part and DENIED in part. The defendants are enjoined from enforcing section 526(a)(4) as it applies to attorneys. The defendants are further enjoined from enforcing section 528(a)(3) and (a)(4) as applied to attorneys representing clients other than consumer debtors filing for bankruptcy.

· The defendants' motion to dismiss [Dkt. # 30] is GRANTED as to the challenge to sections 527 and 528(a)(1) and (a)(2), and as to section 528(a)(3) and (a)(4) as applied to attorney advertising by attorneys representing consumer debtors regarding bankruptcy services. The defendants' motion to dismiss is DENIED as to section 526(a)(4) and section 528(a)(3) and (a)(4) as applied to attorneys representing clients other than consumer debtors filing for bankruptcy.

SO ORDERED.

ernment interest and was not sufficiently narrow in scope. *See Milavetz*, 355 B.R. at 766–767. However, the *Milavetz* court based its decision to use the *Central Hudson* test on Supreme Court precedent regarding *restrictions* on truthful advertising, rather than on precedent regarding disclosure requirements. *See id.* at 766. This Court finds that under the Supreme Court and Second Circuit precedent described above, *Central Hudson* is not the appropriate standard to apply to compelled disclosures in the commercial context.
　In *Olsen*, the court also applied *Central Hudson*, but stated that section 528 more closely resembled the statute in *Zauderer*, because it found that the regulation was constitutional even under the more rigorous standard. *Olsen*, 350 B.R. at 920. As described above, this Court respectfully disagrees with

the *Olsen* court to the extent that its decision upholds the requirement of the two-line advertising disclosure in situations in which the statement is indeed false.

**19.** Compelled speech requirements that violate the First Amendment satisfy the requirement of irreparable injury for a preliminary injunction. *Paulsen v. County of Nassau*, 925 F.2d 65, 68 (2d Cir.1991).

**20.** The overbreadth doctrine does not apply to commercial speech; *see Florida Bar v. Went For It*, 515 U.S. 618, 624, 115 S.Ct. 2371, 132 L.Ed.2d 541 (1995); so the debtor's attorney plaintiffs cannot challenge the law because it is unconstitutional as applied to lawyers who do not represent debtors. *See also* Chemerinsky, *supra*, at 578.