*Connecticut Bar Association v. United States*

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2009

(Argued: September 24, 2009          Decided: September 7, 2010)

Docket Nos. 08-5901-cv (Con), 09-0015-cv (XAP)[1]

CONNECTICUT BAR ASSOCIATION, NATIONAL ASSOCIATION OF CONSUMER
BANKRUPTCY ATTORNEYS, CHARLES A. MAGLIERI, EUGENE S.
MELCHIONNE, WAYNE A. SILVER, IRA B. CHARMOY, JEFFREY M. SKLARZ,
GERALD A. ROISMAN, BROWN & WELSH PC, ANITA JOHNSON,

*Plaintiffs-Appellants-Cross-Appellees*,

—v.—

UNITED STATES OF AMERICA, ERIC H. HOLDER, JR., ATTORNEY GENERAL
OF THE UNITED STATES, DIANA G. ADAMS, UNITED STATES TRUSTEE,

*Defendants-Appellees-Cross-Appellants*.[2]

---

[1] The appeal in docket no. 08-4797-cv was withdrawn by stipulation on January 21,
2009.

[2] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Eric H.
Holder, Jr., is automatically substituted for former Attorney General Michael B. Mukasey.
The Clerk of the Court is directed to amend the caption to read as shown above.

Before:

LEVAL, RAGGI, *Circuit Judges*, and GLEESON, *District Judge*.[3]

—————————

Cross-appeals from a judgment of the United States District Court for the District of Connecticut (Christopher F. Droney, *Judge*), granting in part and denying in part defendants' motion to dismiss plaintiffs' facial First Amendment and due process challenges to various provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005), see 11 U.S.C. §§ 526(a)(4), 527(a) and (b), 528(a)(1)-(4) and (b)(2); and granting in part and denying in part plaintiffs' motion to enjoin defendants' enforcement of the challenged provisions.

AFFIRMED in part, VACATED and REMANDED in part, and injunction DISSOLVED.

—————————

BARRY S. FEIGENBAUM (Jonathan S. Massey, Massey & Gail LLP, Washington, D.C., *on the brief*), Rogin Nassau LLC, Hartford, Connecticut, *for Plaintiffs-Appellants-Cross-Appellees*.

MARK B. STERN (Tony West, Assistant Attorney General, Mark R. Freeman, Attorney, Civil Division, United States Department of Justice, *on the brief*), *on behalf of* Nora R. Dannehy, Acting United States Attorney for the District of Connecticut, *for Defendants-Appellees-Cross-Appellants*.

—————————

—————————

[3] District Judge John Gleeson of the United States District Court for the Eastern District of New York, sitting by designation.

REENA RAGGI, *Circuit Judge*:

Plaintiffs, the Connecticut Bar Association; the National Association of Consumer Bankruptcy Attorneys; the law firm of Brown & Welsh P.C.; attorneys Charles Maglieri, Eugene S. Melchionne, Wayne A. Silver, Ira B. Charmoy, Jeffrey M. Sklarz, and Gerald A. Roisman; and debtor Anita Johnson, sued defendants, the United States, the Attorney General of the United States, and United States Trustee Diana G. Adams, in the United States District Court for the District of Connecticut (Christopher F. Droney, *Judge*) for a judgment declaring unconstitutional various provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"), and enjoining their enforcement. Plaintiffs now appeal from a November 7, 2008 judgment that granted in part defendants' motion to dismiss the complaint. See Connecticut Bar Ass'n v. United States, 394 B.R. 274, 280 (D. Conn. 2008). Defendants, in turn, cross-appeal the judgment insofar as it granted in part plaintiffs' motion for declaratory and injunctive relief.

We review these cross-appeals with a benefit not available to the district court: the Supreme Court's decision in Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. 1324 (2010), which clarified the construction of some of the statutory sections here at issue. Following Milavetz, and for the reasons stated in this opinion, we affirm that part of the judgment ordering dismissal and vacate that part of the judgment ordering declaratory relief. We dissolve the injunction and remand the case for further proceedings consistent with this opinion.

3

## I. Background

### A. BAPCPA

In 2005, Congress enacted BAPCPA, intended as a comprehensive reform measure to curb abuses and improve fairness in the federal bankruptcy system. See id. at 1329-30; see also H.R. Rep. No. 109-31, reprinted in 2005 U.S.C.C.A.N. 88, 89 (describing purpose of BAPCPA as "to improve bankruptcy law and practice by restoring personal responsibility and integrity in the bankruptcy system and ensure that the system is fair for both debtors and creditors"). The BAPCPA provisions here at issue, codified at 11 U.S.C. §§ 526-528, govern the conduct of "debt relief agencies," defined at 11 U.S.C. § 101(12A) as "any person who provides any bankruptcy assistance to an assisted person[4] in return for the payment of money or other valuable consideration, or who is a bankruptcy petition preparer." Certain persons and entities are specifically excluded from this definition. Attorneys are not among them.[5]

_____

[4] Title 11 U.S.C. § 101(3) defines an "assisted person" as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $175,750," an amount to be periodically adjusted for inflation, see id. § 104.

[5] Section 12A states that "[t]he term 'debt relief agency' . . . does not include" the following: (A) "an officer, director, employee or agent" of a debt relief agency; (B) a tax-exempt "nonprofit organization"; (C) "a creditor of [a person receiving bankruptcy assistance], to the extent the creditor is assisting such assisted person to restructure any debt owed by such assisted person to the creditor"; (D) a "depository institution" or "credit union," as defined by specified federal law, or the affiliate or subsidiary of such an institution; or (E) "an author, publisher, distributor or seller of works" subject to federal copyright protection, "when acting in such capacity." 11 U.S.C. § 101(12A).

4

B.     Plaintiffs' Constitutional Challenge

Plaintiffs submit that any construction of "debt relief agency" that includes attorneys renders certain provisions of BAPCPA unconstitutional. Specifically attacked as facially violative of the First Amendment's guarantee of free speech are the following sections of Title 11: (1) § 526(a)(4), which prohibits debt relief agencies from advising their clients "to incur more debt in contemplation of [bankruptcy] or to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor" in a bankruptcy case;[6] (2) § 527(a) and (b), which require a debt relief agency to provide an assisted person with certain notices;[7] (3) § 528(a)(1)-(2), which require a debt

_____

[6] Section 526 states in pertinent part:

(a) A debt relief agency shall not –

. . .

> (4) advise an assisted person or prospective assisted person to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.

11 U.S.C. § 526(a)(4).

[7] Although plaintiffs' complaint references § 527 generally, their arguments to this court address only § 527(a)(2)(C) and (b). In the district court, plaintiffs expressly limited their challenge to § 527(a)(2) and (b). See Pls.' Reply Mem. Supp. Mot. Prelim. Inj. at 27. Accordingly, any challenge to other provisions of § 527 is waived. See In re Enron Corp., 419 F.3d 115, 126 (2d Cir. 2005) (noting that "federal appellate court will generally not consider an issue or argument not raised in the district court" (alteration and internal quotation marks omitted)). The challenged provisions of § 527 state as follows:

(a) A debt relief agency providing bankruptcy assistance to an assisted person

5

shall provide –

. . .

(2) to the extent not covered in the written notice described in paragraph (1), and not later than 3 business days after the first date on which a debt relief agency first offers to provide any bankruptcy assistance services to an assisted person, a clear and conspicuous written notice advising assisted persons that –

(A) all information that the assisted person is required to provide with a petition and thereafter during a case under this title is required to be complete, accurate, and truthful;

(B) all assets and all liabilities are required to be completely and accurately disclosed in the documents filed to commence the case, and the replacement value of each asset as defined in [11 U.S.C. §] 506 must be stated in those documents where requested after reasonable inquiry to establish such value;

(C) current monthly income, the amounts specified in [11 U.S.C. §] 707(b)(2), and, in a case under chapter 13 of this title, disposable income (determined in accordance with [11 U.S.C. §] 707(b)(2)), are required to be stated after reasonable inquiry; and

(D) information that an assisted person provides during their case may be audited pursuant to this title, and that failure to provide such information may result in dismissal of the case under this title or other sanction, including a criminal sanction.

(b) A debt relief agency providing bankruptcy assistance to an assisted person shall provide each assisted person at the same time as the notices required under subsection (a)(1) the following statement, to the extent applicable, or one substantially similar. The statement shall be clear and conspicuous and shall be in a single document separate from other documents or notices provided to the assisted person:

"IMPORTANT INFORMATION ABOUT BANKRUPTCY ASSISTANCE

6

SERVICES FROM AN ATTORNEY OR BANKRUPTCY PETITION PREPARER.

"If you decide to seek bankruptcy relief, you can represent yourself, you can hire an attorney to represent you, or you can get help in some localities from a bankruptcy petition preparer who is not an attorney. THE LAW REQUIRES AN ATTORNEY OR BANKRUPTCY PETITION PREPARER TO GIVE YOU A WRITTEN CONTRACT SPECIFYING WHAT THE ATTORNEY OR BANKRUPTCY PETITION PREPARER WILL DO FOR YOU AND HOW MUCH IT WILL COST. Ask to see the contract before you hire anyone.

"The following information helps you understand what must be done in a routine bankruptcy case to help you evaluate how much service you need. Although bankruptcy can be complex, many cases are routine.

"Before filing a bankruptcy case, either you or your attorney should analyze your eligibility for different forms of debt relief available under the Bankruptcy Code and which form of relief is most likely to be beneficial for you. Be sure you understand the relief you can obtain and its limitations. To file a bankruptcy case, documents called a Petition, Schedules and Statement of Financial Affairs, as well as in some cases a Statement of Intention need to be prepared correctly and filed with the bankruptcy court. You will have to pay a filing fee to the bankruptcy court. Once your case starts, you will have to attend the required first meeting of creditors where you may be questioned by a court official called a 'trustee' and by creditors.

"If you choose to file a chapter 7 case, you may be asked by a creditor to reaffirm a debt. You may want help deciding whether to do so. A creditor is not permitted to coerce you into reaffirming your debts.

"If you choose to file a chapter 13 case in which you repay your creditors what you can afford over 3 to 5 years, you may also want help with preparing your chapter 13 plan and with the confirmation hearing on your plan which will be before a bankruptcy judge.

"If you select another type of relief under the Bankruptcy Code other than

7

relief agency to execute a written contract with an assisted person;[8] and (4) § 528(a)(3)-(4) and (b)(2), which mandate language to be included in debt relief agency advertisements.[9]

---

chapter 7 or chapter 13, you will want to find out what should be done from someone familiar with that type of relief.

"Your bankruptcy case may also involve litigation. You are generally permitted to represent yourself in litigation in bankruptcy court, but only attorneys, not bankruptcy petition preparers, can give you legal advice."

11 U.S.C. § 527(a)(2), (b).

[8] The contract provisions of § 528 state as follows:

(a)    A debt relief agency shall –

(1) not later than 5 business days after the first date on which such agency provides any bankruptcy assistance services to an assisted person, but prior to such assisted person's petition under this title being filed, execute a written contract with such assisted person that explains clearly and conspicuously –

(A) the services such agency will provide to such assisted person; and

(B) the fees or charges for such services, and the terms of payment;

(2) provide the assisted person with a copy of the fully executed and completed contract . . . .

11 U.S.C. § 528(a)(1)-(2).

[9] The advertising provisions of § 528 state as follows:

(a)    A debt relief agency shall –
. . .
(3) clearly and conspicuously disclose in any advertisement of

8

Plaintiffs also contend that the contract requirements of § 528(a)(1)-(2) violate the Fifth Amendment's Due Process Clause.

C.    The District Court Decision

In considering these arguments on plaintiffs' motion for declaratory and injunctive relief and defendants' motion for dismissal, the district court construed the term "debt relief

> bankruptcy assistance services or of the benefits of bankruptcy directed to the general public (whether in general media, seminars or specific mailings, telephonic or electronic messages, or otherwise) that the services or benefits are with respect to bankruptcy relief under this title; and
>
> (4) clearly and conspicuously use the following statement in such advertisement: "We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code." or a substantially similar statement.
>
> . . .
> (b)
> . . .
> (2) An advertisement, directed to the general public, indicating that the debt relief agency provides assistance with respect to credit defaults, mortgage foreclosures, eviction proceedings, excessive debt, debt collection pressure, or inability to pay any consumer debt shall –
>
>> (A) disclose clearly and conspicuously in such advertisement that the assistance may involve bankruptcy relief under this title; and
>>
>> (B) include the following statement:  "We are a debt relief agency.  We help people file for bankruptcy relief under the Bankruptcy Code." or a substantially similar statement.

11 U.S.C. § 527(a)(3)-(4), (b)(2).

9

agency" broadly to include attorneys representing not only consumer debtors but any person who met the statutory definition of "assisted person," whether or not a bankruptcy proceeding concerned that person's own debts. See Connecticut Bar Ass'n v. United States, 394 B.R. at 280 (citing Erwin Chemerinsky, Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 571, 576-77 (2005)). The district court proceeded to hold that (1) § 526(a)(4)'s proscription on certain advice to assume debt was an unconstitutionally overbroad restriction on speech, see id. at 281-84; (2) the disclosure requirements of § 527 did not violate the First Amendment, see id. at 284-87; (3) § 528(a)(1)-(2)'s contract requirements did not violate either the First Amendment or the Due Process Clause, see id. at 287-88; and (4) the advertising mandates of § 528(a)(3)-(4) and (b)(2) violated the First Amendment, but only insofar as they applied to attorneys representing persons other than consumer debtors, see id. at 288-91. The district court dismissed those parts of plaintiffs' complaint found not to allege constitutional violations and granted plaintiffs' motion for a pre-enforcement injunction with respect to those provisions of §§ 526 and 528 found to violate the First Amendment. Both sides appealed.

D.     The *Milavetz* Decision

After briefing and oral argument in this appeal, the Supreme Court decided Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. 1324, which resolved a number of the questions here at issue. Specifically, the Supreme Court held that the term "debt relief

10

agency" does apply to attorneys, see id. at 1331-32, but only those assisting consumer debtors contemplating bankruptcy, see id. at 1341.

The Supreme Court also construed § 526(a)(4)'s prohibition on advising clients to take on debt "in contemplation of" bankruptcy to apply only to "advising a debtor to incur more debt because the debtor is filing for bankruptcy, rather than for a valid purpose." Id. at 1336. The Court explained that such advice "will generally consist of advice to 'load up' on debt with the expectation of obtaining its discharge – i.e., conduct that is abusive per se." Id. The Court concluded that when the section was so construed, it raised no First Amendment overbreadth or vagueness concerns. See id. at 1337-38.

Further, the Supreme Court rejected a First Amendment challenge to the advertising requirements of § 528(a)(3)-(4) and (b)(2). Concluding that the requirements pertained to speech that was commercial in nature and compelled only disclosures, the Court determined that the appropriate standard of review was the rational basis test set forth in Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626 (1985). The Court held that the advertising requirements passed this test because they "govern only professionals who offer bankruptcy-related services to consumer debtors," and, as such, reasonably relate to the government's interest in preventing deception of consumer debtors contemplating bankruptcy. See Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1341.

## II. Discussion

Plaintiffs submit that the district court erred in construing the term "debt relief

11

agency" in 11 U.S.C. § 101(12A) to include attorneys; and in dismissing their constitutional challenges to § 527(a) and (b) and § 528(a)(1)-(2) in their entirety, and to § 528(a)(3)-(4) and (b)(2) to the extent those provisions apply to attorneys advising consumer debtors contemplating bankruptcy. Defendants, in turn, fault the district court for declaring unconstitutional § 526(a)(4)'s prohibition on advice to assume debt, as well as the advertising requirements of § 528(a)(3)-(4) and (b)(2) to the extent those requirements apply to attorneys providing bankruptcy assistance to persons other than consumer debtors. We review constitutional challenges to a federal statute de novo. See United States v. Dhafir, 461 F.3d 211, 215 (2d Cir. 2006).

A.    Attorneys Providing Bankruptcy Assistance to Consumer Debtors Qualify as "Debt Relief Agencies"

At its core, plaintiffs' complaint sought a judicial declaration that the challenged statutes do not apply to attorneys, either because the term "debt relief agency" does not include attorneys, or because, if the term does include attorneys, the statutes violate the Constitution. Plaintiffs' first argument is now foreclosed by Milavetz, Gallop, & Milavetz, P.A. v. United States, 130 S. Ct. at 1333, which holds that attorneys representing consumer debtors can qualify as debt relief agencies.

The Supreme Court observed that the term "debt relief agency" was statutorily defined as "'any person who provides any bankruptcy assistance to an assisted person' in return for payment." Id. at 1332 (quoting 11 U.S.C. § 101(12A)). While the statute specifically

12

excludes a variety of persons, attorneys are not among them. See id.[10] In fact, the Court noted that the definition of "bankruptcy assistance" includes a service, "the 'provi[sion of] legal representation with respect to a case or proceeding,' § 101(4A)," that "may be provided only by attorneys." Id. (citing also 11 U.S.C. § 110(e)(2) (prohibiting bankruptcy petition preparers from providing legal assistance)).[11]

The Court, nevertheless, determined that use of the term "assisted person" in the § 101(12A) definition of "debt relief agency" signaled that not all attorneys providing bankruptcy assistance qualified as debt relief agencies. "Assisted person" is statutorily defined as "any person whose debts consist primarily of consumer debts and the value of whose nonexempt property is less than $175,750." 11 U.S.C. § 101(3). From this definition, "stated in terms of the person's debts, . . . and from the text and structure of the debt-relief-agency provisions in §§ 526, 527, and 528 . . . , including § 528's disclosure requirements," the Supreme Court deemed it "evident" that §§ 526-528 "govern only professionals who offer bankruptcy-related services to consumer debtors." Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1341.

---

[10] See supra at n.3 for persons statutorily excluded from definition of "debt relief agency."

[11] The full definition of "bankruptcy assistance" is as follows: "any goods or services sold or otherwise provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors' meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding under this title." 11 U.S.C. § 101(4A).

13

Following this holding, we review plaintiffs' constitutional challenge to the statutes at issue with the understanding that the only attorneys qualifying as debt relief agencies are those advising consumer debtors contemplating bankruptcy.

B.     Standing

Before undertaking that constitutional review, we consider Milavetz's effect on plaintiffs' standing to mount the instant pre-enforcement challenge. Although defendants did not appeal the district court's rejection of their standing challenge to attorney plaintiffs who did not represent consumer debtors, see Connecticut Bar Ass'n v. United States, 394 B.R. at 279, we remain obliged to ensure that an appeal presents a proper case or controversy, see DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 340-41 (2006); New York Pub. Interest Research Group v. Whitman, 321 F.3d 316, 324-25 (2d Cir. 2003).

With Milavetz clarifying that §§ 526-528 apply "only [to] professionals who offer bankruptcy-related services to consumer debtors," 130 S. Ct. at 1341, we are now compelled to conclude that the plaintiff law firm of Brown & Welsh, which represents only creditors, and attorney plaintiff Gerald Roisman, who also does not represent debtors in bankruptcy, lack standing to pursue this case. Neither can demonstrate the requisite "actual and well-founded fear" that the challenged statutes will be enforced against them. American Booksellers v. Dean, 342 F.3d 96, 101 (2d Cir. 2003) (internal quotation marks omitted); see Global Network Commc'ns, Inc. v. City of New York, 562 F.3d 145, 152 (2d Cir. 2009) (holding standing lacking where unlicensed plaintiffs challenged regulations "affect[ing] only

14

entities operating under a license"). Accordingly, we vacate the declaratory judgment and dissolve the injunction entered in favor of these plaintiffs, and we remand with directions to dismiss the complaint as to them for lack of jurisdiction. See Warth v. Seldin, 422 U.S. 490, 498 (1975).

No such standing concern arises, however, with respect to either the remaining attorney plaintiffs, who do represent consumer debtors in bankruptcy, or the institutional plaintiffs, whose membership includes such attorneys. See id. at 511; Building & Trades Council of Buffalo v. Downtown Dev., Inc., 448 F.3d 138, 144-50 (2d Cir. 2006).[12] Debtor plaintiff Anita Johnson also has standing as she asserts that the challenged laws interfere with her "right to receive information and ideas." Board of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico, 457 U.S. 853, 866-67 (1982); see also Virginia State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. 748, 756-57 (1976) (recognizing First

_____

[12] It is not clear on the present record whether this conclusion applies to attorney plaintiff Wayne Silver, who alleges that he has discontinued his representation of consumer debtors based on a belief that the challenged statutory provisions conflict with his ethical obligations. Allegations of a "subjective 'chill'" are generally "not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Laird v. Tatum, 408 U.S. 1, 13-14 (1972); see Bordell v. Gen. Elec. Co., 922 F.2d 1057, 1060-61 (2d Cir. 1991) (discussing plaintiff's obligation to "substantiate his claim that the challenged conduct has deterred him from engaging in protected activity"); accord Brooklyn Legal Servs. Corp. v. Legal Servs. Corp., 462 F.3d 219, 226 (2d Cir. 2006). For the reasons discussed with respect to plaintiffs whose standing is established, dismissal of the complaint as to Silver would be warranted in any event, with the possible exception of a challenge to § 526(a)(4)'s attorney's fee provision for reasons discussed infra n.13. Should Silver pursue such a claim on remand, the district court should first determine his standing consistent with this opinion.

15

Amendment right to receive information in context of commercial speech).

Accordingly, we proceed to the merits of these plaintiffs' constitutional challenges.

C.    First Amendment Challenge to § 526(a)(4)

Title 11 U.S.C. § 526(a)(4) prohibits a debt relief agency from advising an assisted person "to incur more debt in contemplation of [bankruptcy] or to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor" in a bankruptcy case. In the district court, plaintiffs submitted that these prohibitions ran afoul of the First Amendment's overbreadth doctrine. See Virginia v. Hicks, 539 U.S. 113, 118-19 (2003) (holding that law is unconstitutionally overbroad if it punishes "substantial" amount of protected free speech, when considered in relation to its "plainly legitimate sweep" (internal quotation marks omitted)). Focusing on the statute's "in contemplation of" provision, the district court agreed, specifically rejecting defendants' argument that the language should be construed as limited to "advice aimed at allowing the debtor to take unfair advantage of debt discharge (by running up debt primarily because it will not be repaid)." Connecticut Bar Ass'n v. United States, 394 B.R. at 283-84 (observing "there is no indication in the statute that this prohibition is limited to advice to take on such fraudulent debt").

In Milavetz, however, the Supreme Court determined that the "in contemplation of" provision warranted precisely that narrow construction. The Court construed the phrase to "refer[] to a specific type of misconduct designed to manipulate the protections of the

16

bankruptcy system," that is, "advice to incur more debt because of bankruptcy," generally consisting of "advice to 'load up' on debt with the expectation of obtaining its discharge," conduct that is abusive per se. Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1336. Having so construed the provision, the Court ruled that its proscription was not unconstitutionally overbroad. See id. at 1334. Following Milavetz, this court similarly rejected a pending facial overbreadth challenge to the "in contemplation of" provision of § 526(a)(4). See Adams v. Zelotes, 606 F.3d 34, 2010 WL 1960188, at *2 (2d Cir. 2010).

These binding precedents compel us to reach the same conclusion here. Accordingly, we vacate the challenged declaratory judgment invalidating § 526(a)(4), and we dissolve the injunction barring enforcement of that provision. On remand, we direct the district court to dismiss plaintiffs' constitutional challenge to the "in contemplation of" provision of § 526(a)(4).[13]

---

[13] Although the district court's judgment appears to prohibit enforcement of § 526(a)(4) in its entirety, the court did not discuss the "attorney's fee" provision of that statute as distinct from the "in contemplation of" provision. Nor have the parties emphasized that part of the statute. Indeed, it was not until their reply brief on appeal that defendants even referenced the attorney's fee provision, challenging plaintiffs' attempt to distinguish the two § 526(a)(4) prohibitions in their responsive brief. See Reply Brief of Defendants-Appellees at 20 ("Plaintiffs do not suggest that the district court analyzed the second clause of section 526(a)(4), and their efforts to supply their own analysis provide no basis for invalidating the statute.").

On this record, we do not think the constitutionality of the attorney's fee provision of § 526(a)(4) is properly before us on appeal. Issues raised for the first time in a reply brief are generally deemed waived. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). Here, we think the issue is not so much waived as insufficiently developed by the parties in either the district court or this court. This is perhaps understandable given that the parties'

17

D.     First Amendment Challenges to §§ 527 and 528

1.     The Standard of Review

Plaintiffs assert that provisions of §§ 527 and 528 violate the First Amendment in compelling debt relief agencies to provide certain written notices to their bankruptcy clients, see 11 U.S.C. § 527(a) and (b); to execute written contracts with such clients, see id. § 528(a)(1)-(2); and to make particular disclosures in public advertising of bankruptcy services, see id. § 528(a)(3)-(4) and (b)(2). In considering the parties' cross-appeals from the district court's rulings on these First Amendment challenges, we must first identify the applicable standard of review. Plaintiffs urge us to apply strict scrutiny, see Citizens United v. Fed. Election Comm'n, 130 S. Ct. 876, 898 (2010) (explaining that strict scrutiny "requires the Government to prove that the [challenged speech] restriction furthers a compelling interest and is narrowly tailored to achieve that interest" (internal quotation marks omitted)), arguing that the disclosures mandated by the challenged statutory provisions "are not commercial speech" in that "they do not propose a commercial transaction. Rather, they

_____

filings and arguments all pre-dated the Milavetz decision. Milavetz does not address the constitutionality of the attorney's fee provision of § 526(a)(4). See 130 S. Ct. at 1334 (noting that only "in contemplation of" provision was there at issue); see also Adams v. Zelotes, 2010 WL 1960188, at *1 n.1 (same). Nevertheless, any First Amendment challenge to that provision might appropriately consider Milavetz's discussion of the statute's structure and purpose. In these circumstances, although we vacate the declaratory judgment and injunction prohibiting enforcement of § 526(a)(4), our remand directive with respect to the attorney's fee provision of the statute is not for dismissal but is without prejudice to plaintiffs seeking the district court's further consideration of their constitutional challenge to this distinct part of the statute.

18

relate to the operation of the bankruptcy system," Brief of Plaintiffs-Appellants ("Pls.' Br.") at 19. Alternatively, plaintiffs submit that if the mandated disclosures constitute commercial speech, the appropriate standard of review is intermediate scrutiny, as identified in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. 557, 566 (1980), not rational basis review, as specified in Zauderer v. Office of Disciplinary Counsel, 471 U.S. at 626, and as applied by the district court in this case, see Connecticut Bar Ass'n v. United States, 394 B.R. at 286-87, 290.[14]

We conclude that the speech regulated by the challenged statutes is commercial. Further, because the regulations compel disclosure without suppressing speech, Zauderer, not Central Hudson, provides the standard of review.

      a.      The Challenged Provisions Regulate Commercial Speech

      (1)      Identifying Commercial Speech

The propriety of distinguishing commercial from noncommercial speech in evaluating a First Amendment claim derives from Supreme Court precedents affording the former only "a limited measure of protection, commensurate with its subordinate position in the scale of

---

[14] As the Supreme Court explained in Zauderer, to pass the rational basis test, a mandated disclosure must be "reasonably related to the State's interest in preventing deception of consumers" in circumstances otherwise likely to be misleading. 471 U.S. at 651. By contrast, for "restrictions on nonmisleading commercial speech regarding lawful activity," to pass intermediate scrutiny, the restrictions must "directly advance a substantial governmental interest and be no more extensive than is necessary to serve that interest." Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1339 (internal quotation marks and alterations omitted) (explaining Central Hudson test).

19

First Amendment values." Ohralik v. Ohio State Bar Ass'n, 436 U.S. 447, 456 (1978); accord

Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1339; United States v. Edge

Broad. Co., 509 U.S. 418, 426 (1993). The Supreme Court has explained that

> [t]wo features of commercial speech permit regulation of its content. First, commercial speakers have extensive knowledge of both the market and their products. Thus, they are well situated to evaluate the accuracy of their messages and the lawfulness of the underlying activity. In addition, commercial speech, the offspring of economic self-interest, is a hardy breed of expression that is not particularly susceptible to being crushed by overbroad regulation.

Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. at 564 n.6

(internal quotation marks and citation omitted); see Clear Channel Outdoor, Inc. v. City of

New York, 594 F.3d 94, 104 n.11 (2d Cir. 2010) (explaining that commercial speech is

"more durable" and "less central to the interests of the First Amendment than other forms of

speech" (internal quotation marks omitted)).[15]

---

[15] This court has noted the existence of "doctrinal uncertainties left in the wake of Supreme Court decisions from which the modern commercial speech doctrine has evolved." Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth., 134 F.3d 87, 94 (2d Cir. 1998). These pertain not only to the distinction drawn between commercial and noncommercial speech, but also to the principle that disclosure requirements implicate First Amendment interests to a lesser degree than does suppressed speech. See, e.g., Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1342-44 (Thomas, J., concurring in part and concurring in the judgment) (questioning constitutional basis for applying relaxed scrutiny to disclosure mandates respecting commercial speech); 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 517 (1996) (Scalia, J., concurring in part and concurring in the judgment) (expressing "discomfort with the Central Hudson test"); Rubin v. Coors Brewing Co., 514 U.S. 476, 493-94 (1995) (Stevens, J., concurring in the judgment) (criticizing "misguided" approach of Central Hudson to commercial/noncommercial distinction); Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 657 (1985) (Brennan, J., concurring in part, concurring

While the "core" notion of commercial speech is "speech which does 'no more than propose a commercial transaction,'" Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 66 (1983) (quoting Virginia State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc., 425 U.S. at 762), the Supreme Court has also defined commercial speech as "expression related solely to the economic interests of the speaker and its audience," Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. at 561. Moreover, it has held that speech does not cease to be commercial merely because it alludes to a matter of public debate. See Bolger v. Youngs Drug Prods. Corp., 463 U.S. at 67-68 (reviewing advertisements for contraceptives as commercial speech "notwithstanding the fact that they contain[ed] discussions of important public issues"); Central Hudson Gas & Elec. Co. v. Pub. Serv. Comm'n of N.Y., 447 U.S. at 562 n.5 (rejecting suggestion that any link between product offered for sale and current public debate transformed commercial speech into noncommercial speech). In Riley v. National Federation of the Blind, 487 U.S. 781 (1988) (holding charitable fundraising not commercial speech because financial motivation was "inextricably intertwined with otherwise fully protected speech"), the Supreme Court explained that a court's "lodestars" in distinguishing commercial from noncommercial

in the judgment in part, and dissenting in part) (expressing view that Central Hudson scrutiny should apply to "regulation of commercial speech – whether through an affirmative disclosure requirement or through outright suppression"). We need not pursue these matters further, however, because we are bound by precedent distinguishing commercial and noncommercial speech and applying different standards of review to laws mandating commercial speech disclosures and laws restricting commercial speech.

speech "must be the nature of the speech taken as a whole and the effect of the compelled statement thereon," id. at 796.

(2)    The Statutory Provisions at Issue

With these principles in mind, we consider plaintiffs' argument that the challenged provisions of §§ 527 and 528 regulate noncommercial rather than commercial speech.

(a)    Section 528(a)(3)-(4) and (b)(2)

We start with § 528(a)(3)-(4) and (b)(2) because plaintiffs' argument that those advertising requirements do not regulate commercial speech is now foreclosed by Milavetz. The Supreme Court examined these exact statutory provisions and determined that they "regulate only commercial speech." Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1339. We necessarily reach the same conclusion.

(b)    Section 528(a)(1)-(2)

As for § 528(a)(1)-(2), these provisions require a debt relief agency to prepare and execute a written document disclosing the services to be provided to the debtor, the fee the debtor will pay for those services, and the terms of payment. Such speech is reasonably viewed as the debt relief agency's "propos[al of] a commercial transaction" to the consumer debtor. Bolger v. Youngs Drug Prods. Corp, 463 U.S. at 66 (internal quotation marks omitted). The debt relief agency details the services it will provide in return for specified remuneration. When the debtor manifests acceptance by signing the document, the proposed transaction becomes an enforceable contract. See, e.g., Omega Eng'g, Inc. v. Omega, S.A.,

22

432 F.3d 437, 444 (2d Cir. 2005) (noting basic principle of Connecticut law that contract is binding when parties mutually assent). Accordingly, we conclude that the contract requirements of § 528(a)(1)-(2) qualify as commercial speech. See generally Zauderer v. Office of Disciplinary Counsel, 471 U.S. at 651 (treating required attorney notification to clients of potential costs of litigation as commercial speech).

(c)     Section 527(a) and (b)

The disclosures required by § 527(a) and (b) provide consumer debtors with basic information about bankruptcy. Such speech is by its nature commercial. First, it provides a consumer debtor with information about what to expect in a commercial transaction with a debt relief agency providing bankruptcy assistance. Second, the speech is situated in the federal bankruptcy system, a creature of law pervaded by commerce. That system allows debtors to refashion commercial transactions in order to discharge debt obligations. In this sense, the speech at issue may be understood as facilitating the debtor's proposal of any number of new commercial transactions to his creditors. The government's power to regulate these commercial transactions justifies its concomitant power to regulate commercial speech linked to the transactions. See generally 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 499 (1996) (collecting cases). Third, the regulated speech is grounded in a commercial assumption that is itself the basis for debt relief agencies' "procurement of remunerative employment," Ohralik v. Ohio State Bar Ass'n, 436 U.S. at 459, i.e., that the information provided by debt relief agencies can assist debtors to navigate the bankruptcy system to their

23

economic advantage. The requirements imposed by § 527 reinforce the assumption by detailing the minimum disclosures that a debt relief agency must make to permit debtors to make informed bankruptcy choices. Thus, we conclude both from the mandated disclosures and the context in which they are made that § 527(a) and (b) regulate commercial speech. See generally Riley v. Nat'l Fed'n of the Blind, 487 U.S. at 796 (signaling that overall "nature" and "effect" of speech determine whether it is commercial or noncommercial).

The plainly commercial nature and effect of the mandated disclosures are not diluted by the fact that bankruptcy and the process attending it are frequent subjects of "public debate." Bolger v. Youngs Drug Prods. Corp., 463 U.S. at 68 (internal quotation marks omitted). Nothing in § 527(a) or (b) limits or impedes a debt relief agency's ability to communicate its own views on public issues associated with the bankruptcy system. Much less do those provisions require the expression of such views to be "intertwined" with the mandated disclosures. Cf. Riley v. Nat'l Fed'n of the Blind, 487 U.S. at 796. Indeed, the written disclosure required by § 527(b) can simply be handed to the debtor, after which the debt relief agency may pursue whatever avenue of discussion professional judgment warrants.

Further, our conclusion that § 527 regulates only commercial speech comports with this court's prior treatment of similar disclosure requirements. See, e.g., New York State Restaurant Ass'n v. N.Y. City Bd. of Health, 556 F.3d 114, 131-32 (2d Cir. 2009) (treating required restaurant posting of nutritional information as commercial speech); National Elec.

24

Mfrs. Ass'n v. Sorrell, 272 F.3d 104, 113 (2d Cir. 2001) (treating required labeling as to mercury content of light bulbs as commercial speech).

   b.   Because the Challenged Statutes Mandate Disclosures but Do Not Suppress Speech, They Are Properly Subject to Rational Basis Review

Plaintiffs submit that, even if the challenged §§ 527-528 provisions regulate commercial speech, their First Amendment claims warrant at least the intermediate scrutiny identified in Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, 447 U.S. at 566. Because Milavetz holds otherwise, we are compelled to reject this argument. In discussing § 528(a)(3)-(4) and (b)(2) in Milavetz, the Supreme Court concluded that because those statutory provisions are "directed at misleading commercial speech" and "impose a disclosure requirement rather than an affirmative limitation on speech," the appropriate standard of review is the rational basis test stated in Zauderer. Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1339 (emphasis in original).

The circumstances informing Milavetz's decision to conduct rational basis review of a First Amendment challenge to § 528(a)(3)-(4) and (b)(2) pertain equally to § 527(a) and (b) and § 528(a)(1)-(2). Each of these provisions is directed at misleading commercial speech. Each requires debt relief agencies to disclose specific information about the bankruptcy process to consumer debtors whose frequent ignorance and confusion on that subject could otherwise subject them to easy deception. See infra at Part II.D.2.a.1. None suppresses speech. Accordingly, following Milavetz, we apply rational basis review to

25

plaintiffs' First Amendment challenges to these statutes. Indeed, our own earlier precedent would have pointed us to that conclusion. See National Elec. Mfrs. Ass'n v. Sorrell, 272 F.3d at 115 (applying rational basis review to regulation intended "to better inform consumers" because "Zauderer, not Central Hudson . . . , describes the relationship between means and ends demanded by the First Amendment in compelled commercial disclosure cases," while "[t]he Central Hudson test should be applied to statutes that restrict commercial speech" (emphasis in original)); cf. Bad Frog Brewery, Inc. v. N.Y. State Liquor Auth., 134 F.3d 87, 97 (2d Cir. 1998) (reviewing state attempt to suppress offensive labels under commercial speech standards outlined in Central Hudson).[16]

### 2. The Challenged Statutory Sections Satisfy Rational Basis Review

#### a. Section 527(a) and (b)

##### (1) The Mandated Disclosures Are Supported by a Sufficient Factual Predicate

Plaintiffs contend that the disclosures mandated by § 527(a) and (b) cannot pass even rational basis review because they are unsupported by a "factual predicate." Pls.' Br. at 23.

---

[16] International Dairy Foods Association v. Amestoy, 92 F.3d 67 (2d Cir. 1996), cited by plaintiffs, is not to the contrary. The statute at issue in that case required dairies to disclose on their labels when products were derived from cows treated with growth hormones, even though no state interest appeared to support the requirement. This court subjected the statute to intermediate scrutiny but, as we subsequently explained, that holding "was expressly limited to cases in which a state disclosure requirement is supported by no interest other than the gratification of consumer curiosity." National Elec. Mfrs. Ass'n v. Sorrell, 272 F.3d at 115 (internal quotation marks omitted).

26

We disagree.[17]

Certain facts relevant to our review are self-evident. Specifically, in providing bankruptcy assistance, a debt relief agency does not engage in a merely private commercial transaction with its client. Its activities implicate the nation's bankruptcy system, a uniquely federal arena, see U.S. Const. Art. I, § 8, cl. 4; International Shoe Co. v. Pinkus, 278 U.S. 261, 265 (1929), through which tens of billions of dollars of debt are discharged annually through millions of restructured financial transactions, see H.R. Rep. No. 109-31, reprinted in 2005 U.S.C.C.A.N. 88, 90-91 (indicating discharge of more than $44 billion of debt in 1997). The government's significant interest in avoiding confusion and deception in the operation of this system is self-evident. Considerable record evidence indicates that, in the years before the challenged statutes were enacted, such confusion and deception were sufficiently widespread to undermine the fairness and efficacy of the federal bankruptcy system.

In late 1990s congressional hearings, judges, scholars, and debtors provided evidence indicating that these problems derived largely from consumer debtors' inadequate access to information about the bankruptcy process. Fifth Circuit Judge Edith Hollan Jones, a member of the National Bankruptcy Review Commission, testified that debtor ignorance and

---

[17] Although plaintiffs present their "factual predicate" argument in the section of their brief challenging § 527, it appears to extend to the challenged provisions of § 528 as well. Thus, we begin our rational basis review with § 527, because our rejection of plaintiffs' factual predicate challenge to that statute applies equally to § 528.

confusion were pervasive: "Most debtors never see a judge. Many bankruptcy lawyers never talk to their clients. The first time they see their clients often is when they are in a herd of people in bankruptcy courts and the lawyer raises a hand, and says, 'Anyone who's my client needs to step forward right now.'" Bankruptcy Reform Act of 1998: Part I, Hearing on H.R. 3150 Before House Judiciary Comm., 105th Cong. 15 (1998) (testimony of Hon. Edith H. Jones). This view was reinforced by a survey of debtors conducted by Dr. Tahira K. Hira of Iowa State University, see Consumer Bankruptcy Reform Act: Seeking Fair and Practical Solutions to the Bankruptcy Crisis, Hearing on S. 1301 Before Senate Judiciary Comm., 105th Cong. 28-34 (1998) (testimony of Dr. Tahira K. Hira), as well as by anecdotal evidence, see Bankruptcy Reform Act of 1998: Part I, Hearing on H.R. 3150 Before House Judiciary Comm., 105th Cong. 94 (1998) (testimony of Nicholl J. Russell) (recounting that bankruptcy attorney never advised debtor witness of availability of chapter 13 filing or credit counseling). Bankruptcy Judge Carol J. Kenner explained how such ignorance and confusion made for easy deception, with debtors persuaded to reaffirm their debts in "intimidating circumstances," "without understanding the legal effect of what they are doing" and "without understanding their alternatives." Bankruptcy Reform: Joint Hearing before House Judiciary Comm. and Senate Judiciary Comm., 106th Cong. 35 (1999) (testimony of Hon. Carol J. Kenner).

Plaintiffs do not dispute this factual record. Rather, they contend that the cited testimony raises concerns not addressed by BAPCPA and not contemporaneous to that

28

statute's 2005 enactment. Neither argument merits lengthy discussion. While some of the measures advocated in the cited hearings differ from those embodied in the challenged BAPCPA provisions, the testimony uniformly supports defendants' contention that Congress enacted BAPCPA against a backdrop of documented confusion and deception in the bankruptcy process and a manifest need for more information. As to contemporaneity, plaintiffs themselves confirm the persistence of the identified concern when they state that for the "[m]any Americans fac[ing] bankruptcy as a result of the recent economic downturn," sound legal advice "can make the difference between a satisfactory outcome and financial disaster." Pls.' Br. at 5-6. Thus, once the government demonstrated that ignorance, confusion, and deception infected the bankruptcy process in the late 1990s, the persistence of such problems was sufficiently evident that no subsequent surveys were required to support congressional action in 2005 mandating information disclosure to consumer debtors. Such a conclusion is, in fact, consistent with precedent holding that, while the First Amendment precludes the government from restricting commercial speech without showing that "the harms it recites are real and that its restriction will in fact alleviate them to a material degree," Edenfield v. Fane, 507 U.S. 761, 770-71 (1993), it does not demand "evidence or empirical data" to demonstrate the rationality of mandated disclosures in the commercial context, see New York Restaurant Ass'n v. N.Y. City Bd. of Health, 556 F.3d

29

at 134 n.23.[18]  Indeed, in Milavetz, the Supreme Court rejected an argument that § 528's

advertising requirements could not withstand scrutiny in the absence of evidence that

plaintiffs' advertisements were "misleading." 130 S. Ct. at 1340.  Milavetz held that "[w]hen

the possibility of deception is . . . self-evident  . . . we need not require the State to conduct

a survey of the . . . public before it [may] determine that the [advertisement] had a tendency

to mislead."  Id. (quoting Zauderer v. Office of Disciplinary Counsel, 471 U.S. at 652-53)

(internal quotation marks omitted; alterations in Milavetz).

Accordingly, we reject plaintiffs' factual basis challenge as without merit.

---

[18] Cases cited by plaintiffs are not to the contrary.  In Ibanez v. Florida Department of Business and Professional Regulation, 512 U.S. 136 (1994), the Supreme Court considered a First Amendment challenge to a disclosure requirement for attorney advertising so detailed as to equate to a restriction on speech.  Applying intermediate scrutiny, the Supreme Court noted the government's failure to show a harm that was "potentially real" as opposed to "purely hypothetical," id. at 146, and observed that it had "never sustained restrictions on constitutionally protected speech based on a record so bare as the one" presented, id. at 148 (emphasis added).  By contrast, the harms addressed by § 527 are more than hypothetical. As the record demonstrates, they have actually been experienced by litigants and observed by courts.  More important, the disclosures mandated by § 527 do not impose any restriction on speech.

Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833 (1992), also provides no support for plaintiffs' factual basis challenge to § 527.  In Casey, the Supreme Court considered the factual basis for a law requiring doctors to make certain disclosures to patients seeking abortions and concluded that it passed strict scrutiny, but it reached this conclusion in analyzing a claimed injury to the due process rights of patients, not the First Amendment rights of doctors.  See id. at 883-85 (plurality opinion).  The Court dispensed with the doctors' First Amendment argument summarily, offering only the terse observation that a "physician's First Amendment rights not to speak [we]re implicated [by the challenged law], but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State."  Id. at 884 (citation omitted).

30

(2) Section 527 Does Not Compel Misleading Disclosures

In urging us to conclude that § 527 lacks a rational basis, plaintiffs devote considerable effort to arguing that the statute compels inaccurate or misleading disclosures, which cannot relate to a legitimate government interest. For example, plaintiffs complain that § 527(b) requires them to advise assisted persons that, if they choose to file for bankruptcy under chapter 13, they "may want help preparing [their] chapter 13 plan[s]" without requiring a further statement that "attorneys are the only ones authorized by law to provide such help." Reply Brief of Plaintiffs-Appellants ("Pls.' Reply") at 22. In fact, § 527(b) does require a further disclosure that "only attorneys, not bankruptcy petition preparers, can give you legal advice." In any event, nothing in § 527 precludes an attorney from providing an assisted person with more information than is contained in the mandated disclosures to ensure accurately informed choice. For the same reason, i.e., that § 527's disclosures do not purport to be exhaustive, we identify no merit in plaintiffs' complaint that the statute is unconstitutional because it fails to identify all the documents that a debtor might be required to file in a bankruptcy proceeding. See Pls.' Br. at 28.

As for plaintiffs' complaint that § 527(b) erroneously refers to the bankruptcy trustee as a "court official," see id., the argument is foreclosed by our decision in United States v. Crispo, 306 F.3d 71 (2d Cir. 2002), which, in upholding a criminal conviction for obstruction of justice, see 18 U.S.C. § 1503 (proscribing corruption of "officer in or of any court of the United States"), determined that Congress itself had placed bankruptcy trustees in the

31

category of conventional court officers, see United States v. Crispo, 306 F.3d at 81 (discussing Bankruptcy Act of 1898, 30 Stat. 44, which defined "officer" to include "clerk, marshal, receiver, referee, and trustee").

Plaintiffs further complain that § 527 is misleading in implying that certain requirements apply uniformly to all bankruptcy debtors. We need not discuss these requirements individually because plaintiffs' concern is adequately assuaged by § 527(b)'s mandate for the following preliminary disclosure: "The following information helps you understand what must be done in a routine bankruptcy case to help you evaluate how much service you need. Although bankruptcy can be complex, many cases are routine." 11 U.S.C. § 527(b) (emphasis added). Further, because § 527(b) allows debt relief agencies to make the disclosures required by that subsection using language "substantially similar" to that specified and, in any event, requires disclosures only "to the extent applicable," plaintiffs are not, in fact, compelled to provide misleading information to consumer debtors seeking their assistance. See Hersh v. United States, 553 F.3d 743, 767 (5th Cir. 2008) (noting that § 527(b) requires disclosures only "to the extent applicable" in rejecting First Amendment challenge); see generally Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1341 (noting, in rejecting First Amendment challenge to mandatory advertising disclosures in § 528, that statute affords "flexibility to tailor the disclosures to . . . individual circumstances, as long as the resulting statements are 'substantially similar' to the statutory

examples" (quoting § 528(a)(4) and (b)(2)(B))).[19]

Finally, plaintiffs suggest that the very flexibility afforded by § 527(b) renders the statute impermissibly vague. Pls.' Reply at 26.[20] The due process requirement that statutory prohibitions be defined "with sufficient definiteness that ordinary people can understand what conduct is prohibited" and "in a manner that does not encourage arbitrary and discriminatory enforcement," is chiefly applied to criminal legislation, and requires "less exacting scrutiny" in the civil context. Arriaga v. Mukasey, 521 F.3d 219, 222-23 (2d Cir. 2008). Plaintiffs' vagueness argument is patently meritless. The provisions provide explicit notice of the disclosures required, and, to the extent the statute affords some flexibility, it imposes no greater burden on attorneys' exercise of professional judgment than plaintiffs already carry. See Conn. R. Prof. Conduct 1.4(b) (2010) ("A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding

---

[19] While § 527(a), unlike § 527(b), does not expressly authorize debt relief agencies to tailor the mandated disclosures to specific circumstances, nothing in the statute precludes a debt relief agency, after providing the disclosures required, from exercising professional judgment as to whether a particular debtor's circumstances might fall outside the routine case generally referenced in the disclosure. In these circumstances, we cannot conclude that Congress lacked a rational basis for requiring that debt relief agencies begin by advising every assisted person of what information must be provided in a routine case and how it must generally be calculated. See 11 U.S.C. § 527(a)(2)(C); see also Greater New Orleans Broad. Ass'n, Inc. v. United States, 527 U.S. 173, 192-93 (1999) (noting that challenged regulation had to be evaluated in context of overall statutory scheme, rather than in isolation).

[20] Although plaintiffs included a general allegation of vagueness in their complaint, see Compl. ¶ 45, they did not argue vagueness on appeal until their reply brief, making it doubtful that the issue is properly before us, see Norton v. Sam's Club, 145 F.3d at 117. Nevertheless, for the reasons stated in text, we conclude that the claim is without merit.

the representation."); <u>see also</u> N.Y. R. Prof. Conduct 1.4(b) (2009) (same); Model R. Prof. Conduct 1.4(b) (1995) (same).  Thus, the attorney plaintiffs can hardly complain of inadequate notice.

In sum, we conclude that the disclosure requirements of § 527(a) and (b) do not violate plaintiffs' First Amendment rights, and we affirm the district court's dismissal of plaintiffs' complaint insofar as it challenges this statute.

b.    Section 528(a)(1)-(2)

For reasons stated supra at Part II.D.1.a.2.b, we conclude that the requirements of § 528(a)(1)-(2), like those of § 527(a) and (b) and § 528(a)(3)-(4) and (b)(2), regulate only commercial speech, and therefore plaintiffs' First Amendment challenge to this provision warrants only rational basis review.  In urging us to view this statute differently, plaintiffs submit that § 528(a)(1)-(2)'s contract requirements impose an "affirmative consent" condition on communication between attorneys and clients, thereby burdening protected speech.  Pls.' Br. at 45.[21]  We are not persuaded.

The cases plaintiffs cite apply strict scrutiny to restrictions on the sort of speech traditionally accorded the fullest First Amendment protection.  For example, Lamont v. Postmaster General, 381 U.S. 301 (1965), invalidated a consent requirement to the receipt of "communist political propaganda," a form of political speech, id. at 302.  Martin v. Struthers, 319 U.S. 141 (1948), struck down a statute fining Jehovah's Witnesses for leafletting, a form of religious speech.  Denver Area Educational Telecommunications

---

[21] Although plaintiffs contend that the § 528(a)(1)-(2) contract requirements also violate their clients' First Amendment right of access to the courts, they did not raise this argument in the district court.  A footnote in plaintiffs' memorandum in support of their preliminary injunction motion, stating that "[b]ecause [§ 528(a)(1)-(2)] implicate the client's right of access to court, these provisions must be subjected to strict scrutiny," Pls.' Mem. Supp. Mot. Prelim. Inj. at 45 n.18, is not sufficient to have preserved the issue for our review, cf. United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993) (holding that arguments mentioned only in footnote to appellate brief do not "adequately raise[] or preserve[]" issue for review).

Consortium, Inc. v. FCC, 518 U.S. 727 (1996), held that certain restrictions on "patently offensive" television programming survived strict scrutiny despite the law's generally expansive view of artistic speech. In Riley v. National Foundation of the Blind, 487 U.S. 781, the Supreme Court concluded that charitable solicitations also fell within the range of speech accorded strict First Amendment protection.

The Supreme Court takes a different view of attorney communications, particularly with respect to the procurement of employment, the subject of regulation by § 528(a)(1)-(2). The Court has stated that "[a] lawyer's procurement of remunerative employment is a subject only marginally affected with First Amendment concerns. It falls within the State's proper sphere of economic and professional regulation." Ohralik v. Ohio State Bar Ass'n, 436 U.S. at 459; cf. Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 884 (1992) (plurality opinion) (rejecting First Amendment challenge to state law requiring physicians to provide patients with specific information and observing that physicians' First Amendment rights are "implicated, but only as part of the practice of medicine, subject to reasonable licensing and regulation by the State" (citation omitted)). Accordingly, we conclude that plaintiffs fail to make a case for strict scrutiny of the contract requirements of § 528(a)(1)-(2).

Plaintiffs do not – and cannot – contend that a different rational basis conclusion is warranted for § 528(a)(1)-(2) than for § 527(a) and (b). Both statutes are informed by the same legitimate government concern: minimizing the ignorance, confusion, and deception that too often infect consumer debtors' decisions in pursuing bankruptcy proceedings. See

36

supra at Part II.D.2.a.1. Further, as the district court observed, these statutes impose no heavy burden on plaintiffs subject to Connecticut's Rules of Professional Conduct, which already require attorneys to communicate to their clients the "basis or rate of the fee, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and the scope of the matter to be undertaken . . . in writing, before or within a reasonable time after commencing the representation." Connecticut Bar Ass'n v. United States, 394 B.R. at 288 (quoting Conn. R. Prof. Conduct 1.5); accord N.Y. R. Prof. Conduct 1.5 (2009).

Because we conclude that the contract requirements of § 528(a)(1)-(2) are supported by a rational basis, we affirm the district court's dismissal of plaintiffs' First Amendment challenge to this statute.

c.      Section 528(a)(3)-(4) and (b)(2)

Plaintiffs' rational basis challenge to the advertising requirements of § 528(a)(3)-(4) and (b)(2) mirrors their challenge to the disclosure requirements of § 527(a) and (b). The district court sustained plaintiffs' challenge to the extent that it construed "debt relief agency," as used in the statute, to include attorneys soliciting clients other than consumer debtors contemplating bankruptcy. In all other respects, however, the district court dismissed this claim.

Our review of the parties' cross-appeal challenges to these rulings is controlled by the Supreme Court's holding in Milavetz. As noted supra at Part I.D, the Court there construed

37

the term "debt relief agency" as used in §§ 526-528 to reference "only professionals who offer bankruptcy-related services to consumer debtors." Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1341. Thus, any constitutional concerns identified by the district court with respect to the statute's possible broader application are unwarranted.

To the extent plaintiffs persist in challenging the application of § 528(a)(3)-(4) and (b)(2) to attorneys representing consumer debtors, Milavetz compels rejection of the argument. The Supreme Court concluded that § 528(a)(3)-(4) and (b)(2) were "reasonably related" to the government's legitimate interest in "combat[ing] the problem of inherently misleading commercial advertisements – specifically, the promise of debt relief without any reference to the possibility of filing for bankruptcy, which has inherent costs." Id. at 1340. The Court also rejected the suggestion that the statute compelled misleading disclosures, citing the flexible requirement for a "substantially similar" statement. Id. at 1341 (internal quotation marks omitted).

Following Milavetz, we necessarily conclude that plaintiffs' First Amendment challenge to § 528(a)(3)-(4) and (b)(2) is entirely without merit. Accordingly, we affirm the district court's judgment to the extent it dismissed this claim in part, and we vacate so much of the judgment as declared the statute invalid in part and enjoined its operation. The statute simply does not apply in the circumstances identified by the district court.

E.      Due Process Challenge to § 528(a)(1)-(2)

In addition to their First Amendment challenge to §§ 526-528, plaintiffs contend that

the contract requirements of § 528(a)(1)-(2) violate due process by subjecting debt relief agencies to "strict liability" whenever a client fails to sign a contract. Pls.' Br. at 51.

Strict liability generally raises due process concerns with respect to criminal, not civil, statutes. See, e.g., Lambert v. California, 355 U.S. 225, 229-30 (1957) ("Where a person did not know of the duty to register [residency with city authorities] and where there was no proof of the probability of such knowledge, he may not be convicted consistently with due process."). Due process does not absolutely prohibit strict liability crimes. See Morrisette v. United States, 342 U.S. 246, 256-58 (1952) (recognizing small category of regulatory measures where strict criminal liability may be imposed without violating due process, particularly where penalties are relatively small and no great damage done to reputation). Rather, it commands respect for a presumption, derived from common law, that "injury can amount to a crime only when inflicted by intention." Id. at 250. Thus, courts will not readily assume from a criminal statute's failure to reference knowledge or intent that no proof of mens rea is required to convict. See id.; accord United States v. U.S. Gypsum Co., 438 U.S. 422, 438 (1978). Rather, absent clear indication in the language or legislative history of a contrary congressional purpose, mens rea is presumed to be an element of any federal crime. See Liparota v. United States, 471 U.S. 419, 425 (1985).

Due process dictates no similar presumption with respect to civil statutes. In Morrisette v. United States, Justice Jackson noted that the heightened risks of modern industrial society have increased regulations imposing duties, "many of [which] are

39

sanctioned by a more strict civil liability." 342 U.S. at 253-54. He cited Workmen's Compensation Acts as an obvious example. See id. at 254 n.13. Plaintiffs, nevertheless, urge us to hold that the contract requirements of § 528(a)(1)-(2) violate due process because they expose plaintiffs to strict civil liability based on the inaction of a person outside their control, specifically, a consumer debtor who fails to execute a written contract.

The premise underlying plaintiffs' argument is meritless. It is not a consumer debtor's failure to execute a service contract that exposes debt relief agencies to liability for money damages for violating § 528(a)(1)-(2). Rather, it is a debt relief agency's intentional or negligent provision of bankruptcy assistance to a debtor in the absence of an executed contract. See § 526(c)(2)(A).[22] Nor can plaintiffs claim that such intentional or negligent conduct by a debt relief agency does not represent a departure from a "known standard." See Southwestern Tel. & Tel. v. Danaher, 238 U.S. 482, 490 (1915).[23] Much less can they claim

_____

[22] Title 11 U.S.C. § 526(c)(1) states that a contract that fails to comply with that section, § 527, or § 528 "shall be void and may not be enforced." But a consumer debtor may not recover damages for a violation of any of these sections except on a showing that the debt relief agency itself violated the section "intentionally or negligently." See id. § 526(c)(2)(A). This mens rea requirement is reasonably understood to extend to a state's actions on behalf of its residents to establish liability pursuant to § 526(c)(2)(A). See id. § 526(c)(3)(B).

[23] Plaintiffs' reliance on Danaher is misplaced. The Supreme Court there held that due process did not permit a telephone company to be liable in damages for impartially enforcing a payment regulation that it had no reason to expect would subsequently be declared unreasonable. See 238 U.S. at 489-91. It was in that context that the Court stated: "There was no intentional wrongdoing, no departure from any prescribed or known standard of action, and no reckless conduct." Id. at 490. By contrast, BAPCPA's contract requirements are stated with specificity in § 528(a)(1)-(2).

40

that a damages award for a violation of § 528(a)(1)-(2) would be based solely on the actions of persons over whom they had "no control." See Peisch v. Ware, 8 U.S. (4 Cranch) 347, 365 (1807).[24] Thus, the contract provisions of § 528(a)(1)-(2) do not violate due process, and we affirm the dismissal of this claim.

### III.    Conclusion

To summarize, we reach the following conclusions:

1. Consistent with the Supreme Court's holding in Milavetz, Gallop & Milavetz, P.A. v. United States, 130 S. Ct. at 1341, the term "debt relief agency" as used in 11 U.S.C. §§ 526-528 is properly construed to apply only to those persons assisting consumer debtors contemplating bankruptcy.

2. Because attorney plaintiffs Brown & Welsh, P.C., and Gerald Roisman do not represent consumer debtors in bankruptcy, they lack standing to pursue this action challenging the constitutionality of 11 U.S.C. §§ 526-528. Accordingly, any judgment in their favor is vacated and any accompanying injunction pertaining to them is dissolved. The case is remanded with directions to dismiss the complaint as to these plaintiffs for lack of

---

[24] Peisch is no more helpful to plaintiffs' due process claim than Danaher. Therein, Chief Justice Marshall construed a federal law providing for the forfeiture of goods not bearing proper certificates of importation as "not intend[ed] to comprehend wrecked goods," 8 U.S. at 362, or "to forfeit the property of owners or consignees, on account of the misconduct of mere strangers, over whom such owners or consignees could have no controul," id. at 365. A debt relief agency can certainly control whether it provides bankruptcy assistance in the absence of a contract conforming to § 528(a)(1)-(2).

jurisdiction.

3.   Plaintiffs' overbreadth challenge to the first prong of 11 U.S.C. § 526(a)(4), prohibiting debt relief agencies from advising assisted persons to assume more debt "in contemplation of" bankruptcy, is foreclosed by Milavetz, which construed that provision to reference only abusive conduct.  To the extent judgment was entered in favor of plaintiffs on this claim, the judgment is vacated, the accompanying injunction dissolved, and the case remanded with directions to dismiss plaintiffs' challenge to the "in contemplation of" prong of § 526(a)(4) for failure to state a claim.  The decision to vacate is without prejudice to the parties seeking the district court's further consideration of a First Amendment challenge to the second prong of § 526(a)(4), which prohibits a debt relief agency from advising an assisted person "to pay an attorney or bankruptcy petition preparer fee or charge for services performed" in connection with a bankruptcy proceeding, a claim that was not the focus of the parties' or the district court's attention in the proceedings leading to judgment.

4.   The disclosure requirements of 11 U.S.C. § 527(a) and (b) regulate commercial speech and are reasonably related to a legitimate state interest in minimizing ignorance, confusion, and deception in the bankruptcy process.  As such, they do not violate the First Amendment, and we affirm the judgment insofar as it dismissed this challenge for failure to state a claim.

5.   The contracting requirements of 11 U.S.C. § 528(1)-(2) also regulate commercial speech and are reasonably related to the aforementioned legitimate state interest and do not

42

violate the First Amendment. Nor do those requirements, whose violation may support civil liability for damages only when accompanied by a showing of mens rea, offend the Fifth Amendment Due Process Clause. We affirm the dismissal of these challenges for failure to state a claim.

6. Following Milavetz's holding that the advertising rules of 11 U.S.C. § 528(a)(3)-(4) and (b)(2), as requirements for commercial speech reasonably related to a legitimate state purpose, do not violate the First Amendment, we affirm the judgment insofar as it dismissed this challenge. To the extent the district court held the statute invalid based on a broader construction of the term "debt relief agency" than the Supreme Court applied in Milavetz, we vacate that part of the judgment and dissolve the injunction.

The judgment of the district court is AFFIRMED in part and VACATED in part, and the related injunction is DISSOLVED. The case is REMANDED for further proceedings consistent with this opinion.